UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

UNITED STATES OF AMERICA,

v.

DAVID PIRK, et al.,

                Defendants.
_____

**DECISION AND ORDER**

1:15-CR-00142 EAW

## INTRODUCTION

The above-captioned matter involves 12 remaining defendants named in a 46-count Second Superseding Indictment (Dkt. 33) returned on March 16, 2016, alleging various crimes, including a conspiracy in violation of the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), pertaining to the operation of the Kingsmen Motorcycle Club.

On December 29, 2016, the Government filed a motion requesting that the Court conduct a colloquy with five defendants to whom the Government conveyed formal plea offers: Filip Caruso, Sean McIndoo ("McIndoo"), Stanley Olejniczak, Jack Wood, and Glenn Stacharczyk ("Stacharczyk") (collectively, "Defendants"). (Dkt. 425 at ¶ 4). Citing *Missouri v. Frye*, 566 U.S. 133 (2012), and *Lafler v. Cooper*, 566 U.S. 156 (2012), the Government asked the Court to make a record that Defendants: "(1) are aware of the formally conveyed plea offers; (2) understand the terms and conditions of the plea offers; and (3) are declining the plea after receiving adequate legal advice regarding the potential ramifications of rejecting such offer, including their post-trial sentencing exposure, if

convicted." (*Id.* at ¶ 12). The Government contended that its request was motivated by its concern that certain defense attorneys were not fulfilling their obligations with respect to plea negotiations. (*See id.* at ¶¶ 5, 7). The Government indicated that it had set a plea deadline of November 30, 2016, and it described the status of the plea offers as follows:

> Certain of the above-named defendants' counsel never responded to the government or even acknowledged receipt of the conveyed plea agreement, while another has repeatedly indicated he has not yet had an opportunity to speak with his client about the offer. Others declined the plea offer, but through counsel have continued to engage in plea discussions in good-faith. Still another of the above-named defendants has declined the offer.

(*Id.* at ¶ 5). The Government went on to indicate that it had "concerns, based upon information known to the government, that at least one of the above-named defendants' [sic] wishes to engage in pre-trial negotiations but his counsel may be unresponsive to such wishes." (*Id.* at ¶ 8).

Upon receipt of the Government's motion, the Court issued a scheduling order, setting January 6, 2017, as the deadline to file any response in opposition, and scheduling oral argument for January 12, 2017. (Dkt. 426). Counsel for Stacharczyk filed an affidavit by the deadline set by the Court, setting forth his efforts to discuss the formal plea agreement with his client. (Dkt. 431). No other defendant filed a timely response to the motion.

However, on January 7, 2017, counsel for McIndoo filed a response in opposition to the Government's motion. (Dkt. 432). While acknowledging that *Frye* and *Lafler* support the adoption of measures to guard against ineffective assistance claims arising out of the failure to convey a formal plea offer, counsel for McIndoo contended that

"[n]either decision mandates any such proceeding, and . . . they both address state cases and how states might more adequately take measures to prevent such things." (*Id.* at ¶ 9). Counsel for McIndoo went on to argue that holding a colloquy would be premature when pretrial motions are still pending and Defendants do not have sufficient information about the case to make an informed decision to accept or reject a plea. (*Id.* at ¶¶ 10-13). He also contended that the colloquy would invite the disclosure of matters that would be searching and intrusive (*id.* at ¶¶ 14-16), and "[t]he appearance of bias and impropriety arises if the Court allows the prosecution to use it to put pressure on defendants to plead" (*id.* at ¶ 17).

Oral argument was held before the undersigned on January 12, 2017, at which time the Court granted the Government's motion in part, but only to the extent that it sought to, on the record, memorialize the terms of the plea offer made to each defendant and confirm that defense counsel adequately communicated the offer to his respective client. (Dkt. 484). The Court denied the Government's motion to the extent it sought to delve into any further details concerning the plea discussions between defense counsel and his client. (*Id.*). This Decision and Order sets forth the reasons for granting the Government's motion in part and denying it in part.

## ANALYSIS

The Supreme Court in *Frye* and *Lafler* recognized that the right to effective assistance of counsel applies in the plea-bargaining process. *Frye*, 566 U.S. at 138-44 (considering prejudice arising out of uncommunicated, lapsed plea offer); *Lafler*, 566 U.S. at 173-74 (considering prejudice arising out of deficient advice to reject plea offer

- 3 -

and go to trial).[1] The Supreme Court held that "defense counsel has the duty to communicate formal prosecution offers to accept a plea on terms and conditions that may be favorable to the accused." *Frye*, 566 U.S. at 145. Generally, where defense counsel does not communicate such an offer to the defendant, counsel "d[oes] not render the effective assistance the Constitution requires." *Id.* The Supreme Court also held that, to show prejudice under *Strickland v. Washington*, 466 U.S. 668 (1984), a defendant must demonstrate a reasonable probability that: (1) he "would have accepted the earlier plea offer had [he] been afforded effective assistance of counsel," (2) "the plea would have been entered without the prosecution canceling it or the trial court refusing to accept it," and (3) "the end result of the criminal process would have been more favorable by reason of a plea to a lesser charge or a sentence of less prison time." *Id.* at 147; *see also Lafler*, 566 U.S. at 164 ("In these circumstances a defendant must show that but for the ineffective advice of counsel there is a reasonable probability that the plea offer would have been presented to the court (*i.e.*, that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed.").

In light of the concern that failure to communicate formal plea offers may give rise to an ineffective assistance claim, the Supreme Court in *Frye* noted that "[t]he

---

[1]  At least in the Second Circuit, the Supreme Court's holdings in *Frye* and *Lafler* have not been interpreted as recognizing new rules of constitutional law. *Gallagher v. United States*, 711 F.3d 315, 315-16 (2d Cir. 2013).

prosecution and the trial courts may adopt some measures to help ensure against late, frivolous, or fabricated claims after a later, less advantageous plea offer has been accepted or after a trial leading to conviction with resulting harsh consequences." 566 U.S. at 146. To that end, the Supreme Court stated, *inter alia*, that "formal offers can be made part of the record at any subsequent plea proceeding or before a trial on the merits, all to ensure that a defendant has been fully advised before those further proceedings commence." *Id.*

Of course, any efforts to memorialize the terms of a plea offer must be tempered against Federal Rule of Criminal Procedure 11. That rule provides: "An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. *The court must not participate in these discussions*." Fed. R. Crim. P. 11(c)(1) (emphasis added). "This rule is in place because such discussion 'inevitably carries with it the high and unacceptable risk of coercing a defendant to accept the proposed agreement and plead guilty.'" *United States v. Paul*, 634 F.3d 668, 671 (2d Cir. 2011) (quoting *United States v. Bruce*, 976 F.2d 552, 556 (9th Cir. 1992)).

> The concern that these fears may be translated into an involuntary plea have been admirably expressed in an often-quoted statement by Judge Weinfeld: "The unequal positions of the judge and the accused, one with the power to commit to prison and the other deeply concerned to avoid prison, at once raise a question of fundamental fairness. When a judge becomes a participant in plea bargaining he brings to bear the full force and majesty of his office. His awesome power to impose a substantially longer or even maximum sentence in excess of that proposed is present whether referred to or not. A defendant needs no reminder that if he rejects the proposal, stands upon his right to trial and is convicted, he faces a significantly longer

sentence. One facing a prison term, whether of longer or shorter duration, is easily influenced to accept what appears the more preferable choice[.]"

*United States v. Werker*, 535 F.2d 198, 202 (2d Cir. 1976) (quoting *United States ex rel. Elksnis v. Gilligan*, 256 F. Supp. 244, 254 (S.D.N.Y. 1966)).

In addition, the Court bears the obligation to ensure that a defendant's Sixth Amendment right to effective assistance of counsel—whether in connection with plea negotiations or other aspects of the proceedings—is being met. *Garcia v. Teitler*, 443 F.3d 202, 209 (2d Cir. 2006) (district court is obligated to protect a defendant's Sixth Amendment right to effective assistance of counsel). Sometimes that obligation can create tension, such as in this case, when the Government raises issues concerning effective representation by defense counsel. As explained by the court in *United States v. Ramos*, 350 F. Supp. 2d 413 (S.D.N.Y. 2004):

> In protecting the right of criminal defendants to counsel, courts have conflicting duties, on the one hand, to guarantee effective assistance of counsel, police the rules governing the legal profession, and preserve the appearance and reality of fairness in the criminal process, and, on the other, to protect a defendant's right to counsel of choice, and avoid the appearance or reality of government imposition on the attorney-client relationship.

*Id.* at 415.

Faced with these competing principles and obligations, the Court elected to engage in part in the colloquy requested by the Government—namely to memorialize the terms of any plea offer on the record to ensure that the defendant was aware of the offer and understood its terms. To force the disclosure of any further details regarding plea discussions between defense counsel and his client—other than the fact that they had occurred—would in the Court's view unreasonably invade the sanctity of the attorney-

client relationship. Similarly, to have the Court involved in any further discussions about the plea offers would run the risk of violating Rule 11. *Cf. United States v. Braxton*, 784 F.3d 240, 247 (4th Cir. 2015) (finding Rule 11 violation based on district court's repeated comments, made after memorializing plea offer, suggesting that plea would be in defendant's best interest, and that he would receive more favorable sentence if he pleaded guilty); *United States v. Jackson*, CRIMINAL ACTION NO. 5:14-CR-00012-TBR, 2015 WL 5315214, at *2 (W.D. Ky. Sept. 11, 2015) (while it was appropriate for court to make a record of specific plea offer extended to defendant, it would not be appropriate to grant government's request to engage in *ex parte voir dire* with defendant to ascertain reasons for rejecting government's offer).

At the appearance on January 12, 2017, the Court confirmed the terms of the plea offer, that it had been communicated to each defendant, and that each defendant appeared to understand the terms of the offer. In addition, many of the defense attorneys elected to state on the record the reasons that they felt unable at this stage of the proceedings to adequately advise their clients as to the merits of the plea offer at issue, notwithstanding the deadline set by the Government with respect to any pleas.[2] None of the explanations

---

[2] As the Court explained during the appearance on January 12, 2017, it has not set any of its own deadlines with respect to pleas in this case, and it does not intend to do so. Nonetheless, the Government has set a deadline in this case, and as a general rule, "a defendant has no right to be offered a plea, . . . nor a federal right that the judge accept it." *Frye*, 566 U.S. at 148 (citations omitted). *See United States v. Sanchez*, No. 04-CR-6143L, 2006 WL 3780800, at *1 (W.D.N.Y. Dec. 21, 2006) ("The fact the Government sets deadlines for accepting plea bargains to reduced charges does not transform the prosecution into a vindictive one if defendant declines to accept the plea."); *cf. Bordenkircher v. Hayes*, 434 U.S. 357 (1978) (due process not violated by prosecutor's threats of further charges made during plea negotiations); *Weatherford v. Bursey*, 429

provided by defense counsel appeared unreasonable, nor does the Court have any concerns based on these colloquies that Defendants are not receiving adequate representation of counsel.

## CONCLUSION

For the reasons stated on the record on January 12, 2017, and discussed in more detail herein, the Government's Motion to Conduct a *Frye* and *Lafler* Colloquy with Defendants (Dkt. 425) is granted in part and denied in part.

SO ORDERED.

_____
ELIZABETH A. WOLFORD
United States District Judge

Dated: February 23, 2017
       Rochester, New York

---

U.S. 545, 561 (1977) ("But there is no constitutional right to plea bargain; the prosecutor need not do so if he prefers to go to trial. It is a novel argument that constitutional rights are infringed by trying the defendant rather than accepting his plea of guilt.").