UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

—————————————————————————

THE UNITED STATES OF AMERICA

          v.

GREGORY WILSON, et al.,

                Defendants.

—————————————————————————

15-CR-00142-EAW-MJR
DECISION AND ORDER

## INTRODUCTION

On March 16, 2016, a second superseding indictment (the "Indictment") was filed charging sixteen members of the Kingsmen Motorcycle Club ("KMC") with various crimes including racketeering conspiracy, drug trafficking, firearms offenses, Hobbs Act robbery, assault, perjury, obstruction of justice, attempted murder in aid of racketeering and murder in aid of racketeering. (Dkt. No. 33). The Indictment alleges, *inter alia*, that defendants distributed cocaine, marijuana, and other controlled substances, maintained various premises for drug distribution, sold untaxed cigarettes for a profit, and possessed firearms and ammunition for unlawful purposes. With respect to the racketeering conspiracy, the Indictment alleges that purposes of the enterprise included the distribution of controlled substances as well as maintaining premises for the use and distribution of controlled substances, the sale of firearms, the sale of cigarettes and alcohol, the promotion of prostitution and other criminal activities. It is alleged that another purpose of the enterprise was to protect and preserve KMC's power through violence, threats of violence, intimidation, assaults and murder. The murder charges relate to the shooting deaths of Paul Maue and Daniel Szymanski on September 6, 2014.

This case was initially referred by the presiding judge, the Honorable Elizabeth A. Wolford, to this Court, pursuant to 28 U.S.C. §636(b)(1), to determine all pretrial nondispositive matters and to issue a report and recommendation on all dispositive motions. (Dkt. No. 35). Defendants then filed extensive pretrial motions. On January 5, 2017, the Court held a status conference with counsel to discuss various issues, including briefing schedules as to the pending motions and the scheduling of supression hearings.[1] Counsel was informed, at that time, that Judge Wolford and Judge Roemer would divide the handling of motions between themselves in order to expedite the pretrial portion of the case. (Dkt. No. 436). Judge Wolford is to decide, in the first instance, all motions to dismiss, motions for a change of venue, motions for severance and motions for a bill of particulars. (Dkt. 436). Judge Roemer is to decide all remaining non-dispositive discovery motions, and issue a report and recommendation as to all suppression motions. *Id*.

## INSTANT MOTIONS AND JOINDER

Presently before the Court are non-dispositive discovery motions filed by defendants Pirk, Enix, Scanlon, Olejniczak, Osbourne, Stachasczyck, Wood, McIndoo, Williams, and Caruso.[2] The Government filed responses to the motions on January 20, 2017 and replies were filed on February 3, 2017. Oral argument was held before this Court on March 17, 2017. On March 22, 2017, defendant Pirk filed a supplemental discovery request related

---

[1] Counsel for defendants Wilson, Pirk, Jenkins, Enix, Caruso, Williams, Osbourne, Olejniczak, Wood, Scanlon, Stachasczyck, and McIndoo all appeared either in person or through a representative. Defendants not present in person or through their attorney were Dekay, Green, Kostuta and Myrtle, each of whom have entered into a plea agreement with the Government.

[2] This Court issued a Report and Recommendation addressing defendant Wilson's suppression and discovery motions on February 27, 2017, which was adopted by the District Court on March 24, 2017. Separate Reports and Recommendations will be issued addressing supression motions filed by Enix, Scanlon, Olejniczak, and Jenkins, as well as Jenkins' non-dispositive discovery motions.

to *Brady* materials. The Government responded on March 31, 2017, at which time the Court considered these matters submitted.

The Court notes initially that each defendant has moved to join in the discovery motions made by his co-defendants. The Government opposes joinder on the basis that they have not been given sufficient notice. The vast majority of the discovery issues raised herein apply to all defendants, and defendants have made numerous overlapping requests. The Court has thoroughly reviewed the papers submitted in this matter and finds that the Government has had an opportunity to substantively respond to all of the arguments made by defendants, and that joinder would not be prejudicial to the Government. The request for joinder is granted with the further directive and findings that the decisions made by this Court as to each defendant's motions shall also be deemed a finding and order as to all other defendants in this case, to the extent relevant. Therefore, in the discussion below defendants Pirk, Enix, Caruso, Williams, Olejniczak, Wood, Scanlon, Stacharczyck, Osbourne, and McIndoo will be referred to collectively as "defendants." In the event that an issue or motion applies only to one or more specific defendants, the defendant or defendants will be expressly named.

## **DISCUSSION**

### *Rule 16 Requests*

Defendants move for discovery and inspection pursuant to Rule 16 of the Federal Rules of Criminal Procedure, which requires that the government disclose evidence and information upon request of the defendant. While Rule 16 was intended to provide for liberal discovery, a defendant is not entitled to discovery of "the entirety of the

government's case against him." *United States v. Percevault,* 490 F.2d 126, 130 (2d Cir. 1974). Rule 16 provides that a defendant is entitled to the following: (1) a defendant's written, recorded or oral statements in the possession of the government; (2) the defendant's prior record; (3) documents, objects, books, papers, photographs, etc. that will be used during the government's case-in chief; (4) reports of examinations or tests; (5) and information about expert witnesses in accordance with Federal Rules of Evidence 702, 703 and 705. *See* Fed. R. Crim. P. 16(a)(1). Rule 16 specifically exempts from disclosure "reports, memorandum, or other internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." *See* Fed. R. Crim. P. 16(a)(2).

Here, the Government indicates that it has and will continue to comply with the requirements of Rule 16. Specifically, the Government provided defendants with comprehensive voluntary discovery including surveillance reports, search warrant photos, search warrants and returns, laboratory reports, FBI 302's relating to surveillance and arrest of defendants, police reports, transcripts, photographs of narcotics purchases, statements of co-defendants, redacted witness statements, photo array identifications, crime scene photos and reports, firearms and ballistic reports, Facebook photos, and audio recordings of jail calls. The Government has also provided items and documents obtained as a result of searches of eight KMC clubhouses, phone records and analyses, historical cell site mapping, documents and forensic reports related to the investigations of the homicides of Maue and Szymanski, and video surveillance footage. The Government has provided pen register data, grand jury transcripts, KMC meeting minutes and by-laws, search results for electronic devices as well as materials found in connection with the

search and arrest of various defendants.  The Government has further provided redacted victim medical reports, police officer notes, reports from medical examiners, DNA reports, consensual recordings, and police body camera footage.  The Government states that as it identifies any other evidence that falls under Rule 16, it will be provided to defendants. With respect to scientific tests and reports pursuant to Rule 16(a)(1)(F), the Government states that it provided forensic laboratory reports of controlled substances, firearms, ammunition, casings and DNA.  The Government indicated both in its written submissions and during oral argument that to the extent it is still conducting tests or examinations on certain items, those reports or results will be produced when completed.

In addition to the general Rule 16 demands made by all defendants, defendant McIndoo requests the Government provide: (1) an inventory of all matter in its possession which is in any way relevant to the instant charges; (2) a list of what materials, within that matter, have not been disclosed; and (3) an explanation as to why those materials are not subject to disclosure.  The Federal Rules of Criminal Procedure do not entitle defendants to this type of inventory.  Further, there is no evidence here to suggest that the Government is withholding discoverable information, has failed to comply with the rules of discovery in general, or is otherwise acting in bad faith.  If defendants become aware of such evidence, they may bring it to the attention of the Court.

Based upon the representations made by the Government including that it will continue to provide discoverable material and evidence as it becomes available, the Court finds that it is in compliance with Rule 16.  The Court therefore denies defendants' Rule 16 motions as moot.  The Government is reminded that its disclosure obligations continue up through and during trial.  *See* Fed. R. Crim. P. 16(c).

*Expert Disclosures*

Defendants move for expert disclosure. The Government responds that, in accordance with Rule 16, Federal Rules of Evidence 702, 703, and 705, and the District Court's pretrial order, it will disclose the names of potential expert witnesses, the contents of their reports, a list of their credentials and qualifications, the methods used to support their opinion and a summary of their anticipated testimony. In light of these representations, defendants' motion with respect to expert testimony is denied as moot with the caveat that the Government is expected to comply with all requirements in Rule 16, the Federal Rules of Evidence, and Judge Wolford's pretrial order as they apply to expert testimony.

*Rule 12*

Defendants move, pursuant to Federal Rule of Criminal Procedure 12(b)(4)(B), for notice of the Government's intent to use, in their case-in-chief at trial, any evidence that defendants may be entitled to pursuant to Rule 16. The Government has noticed defendants that it intends to use, during its case-in-chief, all items, information or documents that defendants have been provided or made aware of. Defendants' Rule 12(b)(4)(B) motion is denied as moot, and the Government should continue to comply with Rule 12 if and when new evidence becomes available and is anticipated to be used at trial.

*Witness Statements*

Defendants move for the immediate disclosure of witness statements. Their requests essentially encompass all statements by witnesses regarding this case and the conduct alleged, regardless of whether that individual will be testifying at trial. The Government objects to providing the statements of any non-testifying witnesses and

indicates that it will comply with its standard practice of disclosing prior statements of testifying witnesses in advance of trial.

There is no obligation that the Government produce the statements of individuals who are not testifying at trial. *See United States v. Rigas*, 583 F.3d 108, 125-26 (2d Cir. 2009). To the extent that defendants are requesting statements of non-testifying witnesses, their motion is denied.[3]

With regard to witnesses who will provide testimony at trial, Section 3500 of Title 18 of the United States Code requires that the government, on motion of defendant, disclose a government witness's prior statements that are in the government's possession and relate to the subject matter of the witness's direct testimony ("3500 material"). *See also Jencks v. United States*, 353 U.S. 657 (1957); Fed. R. Crim. P. 26.2 (procedure for producing a witness statement). A witness statement is defined as: (1) a written statement by a witness that is signed or otherwise adopted or approved by the witness; (2) a substantially verbatim recording or transcription of a witness's oral statement; or (3) any statement however taken or recorded made by the witness to the grand jury. 18 U.S.C. 3500(e). Statements are not required to be produced, by law, until after the witness has testified on direct examination. *See* 18 U.S.C. §3500(a); Fed. R. Crim. P 26.2(a).

Here, the Government has indicated that, prior to trial and in accordance with the District Judge's pretrial order, it will provide a witness list and a summary of each witness's anticipated testimony. The Government will also provide 3500 material as to each witness

---

[3] The Court notes that in the event a non-testifying witness statement contains exculpatory information or information that would impeach the credibility of Government witnesses, that material is subject to disclosure pursuant to *Brady v. Maryland*, 373 U.S. 83, 87 (1963) and *Giglio v. United States*, 405 U.S. 150, 154-55 (1972).

including FBI 302's, other law enforcement reports and grand jury transcripts.[4]   The

Government also intends to disclose, at that time, witness impeachment information such

as criminal histories, plea agreements, cooperation agreements, proffer agreements and

any other related material or documents.   During oral argument, the Government indicated

that it would work with defense counsel to formulate a protective order, and would then

begin disclosing 3500 material expeditiously and well in advance of trial.   Therefore,

defendants' motion for statements of trial witnesses is denied as moot.   The Government

is encouraged to begin providing 3500 material as soon as practicable, in order to prevent

delays at or immediately prior to trial.

### Brady and Giglio Material

Defendants move for immediate disclosure of exculpatory materials under *Brady*

and *Giglio*.   The Government responds that it has complied with its obligation to provide

exculpatory materials to defendants, and to the extent that additional exculpatory materials

become known to the Government, that information will be disclosed in advance of trial and

in sufficient time for defendants to make effective use of the information.

The Government has an obligation to disclose exculpatory material, or material

favorable to an accused as to either guilt or punishment, even when no affirmative request

has been made.   *Brady v. Maryland*, 373 U.S. 83, 87 (1963).   Material "favorable to an

accused" includes not only evidence that affirmatively tends to exculpate the defendant,

---

[4]   Some defendants' motions appear to make a general request for all FBI 302's or other similar reports in this case.   The Government has represented that it will disclose all FBI 302's related to testifying witnesses, even where the reports do not qualify as "witness statements" pursuant to Section 3500 and the applicable case law.   Other FBI 302's and similar law enforcement reports that do not relate to testifying witnesses, notwithstanding those which contain *Brady* or *Giglio* material, are not required to be produced.

but also information that impeaches the credibility of Government witnesses. *See Giglio v. United States*, 405 U.S. 150, 154-55 (1972). The test for materiality is whether "there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *United States v. Bagley*, 473 U.S. 667, 682 (1985). Evidence may be material for *Brady* purposes even if it is not admissible, as long as it could lead to the discovery of admissible evidence. *United States v. Gill*, 297 F.3d 93, 104 (2d Cir. 2002).

The Second Circuit has qualified that "the purpose of the *Brady* rule is not to provide a defendant with complete disclosure of all evidence in the government's file which might conceivably assist him in the preparation of his defense, but to assure that he will not be denied access to exculpatory evidence known to the government but unknown to him." *United States v. Ruggerio*, 472 F.2d 599 (2d Cir. 1973); *United States v. Sessa*, 711 F.3d 316, 322 (2d Cir. 2013) ("there is no constitutional requirement that the prosecution make a complete and detailed accounting to the defense of all police investigatory work on a case"). Importantly, it has also been recognized that information is not exculpatory merely because it is not affirmatively incriminating. *United States v. Scarpa*, 913 F.2d 993, 1010-11 (2d Cir. 1990). Indeed, *Brady* does not create an "open file" policy or give defendants the right to search through government files. *Pennsylvania v. Ritchie*, 480 U.S. 39, 59 (1987) ("Unless defense counsel becomes aware that other exculpatory evidence was withheld and brings it to the court's attention, the prosecutors decision on disclosure is final.") There is no express timetable for disclosure of *Brady* material, however it must be disclosed in time for defendants to make effective use of it at trial. *Leka v. Portuondo*, 257 F.3d 89, 100 (2d Cir. 2001).

Defendants here are requesting extensive information and materials that reach beyond the purview of *Brady*. For example, defendants seek, *inter alia*, information regarding KMC members who were not charged in the Indictment, all documents and information in the Government's possession where KMC is not referred to as a "one percent club", the mention or lack of mention of defendants during the Government's previous investigation of the Chosen Few Motorcycle Club (the "Chosen Few"), and any information that Maue and Szymanski did not intend to "jump patch".[5] The Government does not have an obligation to produce this material. These examples, and defendants' other similar requests, consist of information that defendants already know or have access to, is publically available, or is not exculpatory as defined by *Brady* and the relevant case law. Indeed, information regarding uncharged members, references to KMC not being a one percent club, and the mention or lack of mention of defendants during the Chosen Few investigation may not be affirmatively incriminating, but neither is it exculpatory. In addition, much of this information is already known by defendants, such as the fact that not all KMC members have been charged with criminal activity and the fact that the KMC Board of Directors previously rejected becoming a one percent club.

Defendant Pirk makes a supplemental request for *Brady* material arising from the Government's investigation of the Chosen Few, a rival motorcycle club, from 2006 through 2008.[6] This includes, *inter alia*, any mention of defendant Pirk during the investigation of the Chosen Few, any failure to mention defendant Pirk when witnesses were asked about

---

[5] In this context, "jump patch" means that they intended to leave the KMC.

[6] The case against the Chosen Few was dismissed, without prejudice, in December 2011.

acts of violence, and any information that KMC members stopped wearing patches in order to avoid violence with the Chosen Few. An agent in the Chosen Few investigation was found to have engaged in misconduct with respect to a confidential human source and another agent was found to have made intentional misrepresentations. Defendant seeks disclosure as to whether either of these agents filed reports or memorandum in this investigation, or if their prior reports were relied upon.

The Court has reviewed the Government's responses, in light of the additional requests, and finds that the Government has complied with its *Brady* obligations as to the Chosen Few investigation and that any remaining requests by defendants are outside the requirements of *Brady*. The Government represents that the investigation of this case began in September of 2014, almost three years after the case against the Chosen Few was dismissed without prejudice. The agents, prosecution team, witnesses, recordings, and physical evidence gathered in this case is completely different than in the Chosen Few investigation. The Indictment here charges different individuals with different crimes arising from separate events. Based upon this information, the Court finds that a lack of mention of these defendants in the Chosen Few investigation, as well as any evidence that KMC members sought to avoid violence with the Chosen Few during that time, is not exculpatory *Brady* material as to the crimes charged in this case. This is not to state that any actual exculpatory information from the Chosen Few investigation that relates to the specific crimes charged in this case is not to be produced. Indeed, the Government states that it has reviewed the Chosen Few file and has not uncovered exculpatory information. Specifically, the Government did not find any documents in the Chosen Few file indicating that KMC members were seeking a truce with the Chosen Few. The Government further

indicates that it did not find favorable information about defendant Pirk nor was he the subject of any interviews in the Chosen Few investigation. Finally, the Government represents that the agents found to have engaged in misconduct during the Chosen Few investigation are not involved in this case.

Defendant Pirk also requests disclosure as to whether the grand jury here was informed: (1) of misconduct by agents in the Chosen Few investigation; (2) that KMC was not affiliated with any "Outlaw Motorcycle Gang"; and (3) that KMC did not retaliate against or engage in acts of violence against the Chosen Few from 2008 through 2011. The Court denies this request. Defendants have failed to make "the strong showing of particularized need" necessary for the disclosure of grand jury minutes. *United States v. Sells Engineering, Inc*., 463 U.S. 418, 443 (1983). The information sought is also duplicative of the information previously requested and denied on the same basis. Moreover, the fact that certain information was not presented to the grand jury is not, in and of itself, *Brady* material.

The Government has represented, throughout this case, that it understands its *Brady* obligations, that it has produced all *Brady* material in its possession, and that it will continue to comply with its *Brady* obligations.[7] With respect to *Giglio* requests, the Government indicates that it will disclose impeachment material well in advance of trial. Thus, further involvement or order from this Court is unnecessary at this time. Much like its finding as to the Rule 16 motions and specifically the request that the Court review an

---

[7] Defendant Stacharczyck requests the internal affairs/personnel files of all law enforcement witnesses. The Government indicates that it is aware of its *Brady/Giglio* obligations in that respect, and that it has a procedure in place for review of government agent files for exculpatory or impeachment material.

inventory of material not produced, the Court does not seek to set a precedent of such close regulation or policing of discovery. This is especially appropriate here, where the Court has not been presented with evidence of bad faith by the Government, and has no reason to doubt as to the Government's representations. For these reasons, defendants' motion for disclosure of exculpatory material is denied as moot. The Government is reminded of its continuing obligations to comply with *Brady* and *Giglio*.

### Disclosure of Informant Identity

Defendants move for disclosure of the identities of confidential informants and cooperators, as well as relevant impeachment materials. The Government objects to the disclosure of this information.

As stated previously, the Government has no general duty to disclose the identities of its witnesses before trial. *United States v. Bejasa*, 904 F.2d 137, 139 (2d Cir. 1990). Further, the Government has a qualified privilege to withhold information concerning the names of confidential informants that it does not intend to call as witnesses. *Rovario v. United States*, 353 U.S. 53, 60-61 (1957) (the purpose of the privilege is to encourage citizens to report criminal activity). The informant's privilege must give way, however, if disclosure is essential to a defense or the fair determination of the case. *United States v. Lilla*, 699 F.2d 99, 105 (2d Cir. 1983). To that end, a defendant seeking the identity of a confidential informant must make some evidentiary showing as to why disclosure is significant to determining defendant's guilt or innocence. *United States v. Jimenez*, 789 F.2d 167, 170 (2d Cir. 1986) (explaining that defendants face a "heavy burden" of establishing that disclosure is essential to the defense); *Lilla*, 699 F.2d at 105 ("this requires some demonstration that in the absence of such disclosure the defendant will be

denied a fair trial"); *United States v. Valenzuela-Bernal*, 458 U.S. 858, 871 (1982) (defendant need not show that the informant's testimony would actually be helpful to the defense, but instead "the events to which a witness might testify, and the relevance of those events to the crime charged").

Defendants have not provided any specific reasons as to why informant identities are material or necessary to their defense. They do not offer an explanation of what the informants might testify about, nor do they establish its relevance to the crimes charged here. Instead, defendants generally state that the information would be relevant and helpful to their defense. This is insufficient to meet their burden. If and when the informants are to be called as witnesses at trial, defendants will have access to their identities as well as all relevant *Jencks* and *Giglio* material. In addition, if the informants reveal exculpatory information at any time, the Government has an ongoing duty to disclose this information under *Brady*. Thus, the Court finds that no prejudice will enure to defendants in continuing to protect the identity of informants at this time. Defendants' motion for disclosure of informant identities is denied without prejudice to defendants' ability to make a further request if additional, relevant information becomes available.

### Unsealing of Search Warrants

Defendants Pirk, Enix, Scanlon and Caruso move for the unsealing of the affidavit submitted in support of search warrants executed in August of 2015 at 2717 California Road (defendant Wood's residence) and six other KMC clubhouses.[8]  The Government

---

[8]  The issuing judicial officer was United States Magistrate Judge H. Kenneth Schroeder, Jr.  The applications, affidavit, warrants and returns were filed under seal.  The Government has provided defense counsel with the applications and warrants, including a list of areas to be searched and items to be seized. Defense counsel has not been provided with the affidavit submitted to establish probable cause for the searches.  The Court has reviewed all of the sealed filings, including the affidavit.

objects to the unsealing of the affidavit because it contains information concerning confidential sources and an ongoing investigation, and because defendants do not have standing to challenge the search warrants.[9]

Defense counsel argues that the affidavit should be unsealed because it is a judicial document that carries with it a First Amendment and common law right of access. Search warrants, which require careful review by a judicial officer, are judicial documents. *See In re Sealed Search Warrants Issued June 4 & 5, 2008*, 08-M-208 (DRH), 2008 U.S. Dist. LEXIS 107711 (NDNY July 14, 2008) (Homer, M.J.) (finding search warrants, returns, applications, and supporting affidavits to be judicial documents). In addition, the First Amendment protects the public's right to access judicial documents and proceedings, *Hartford Courant Co. v. Pellegrino*, 380 F.3d 83, 91-92 (2d Cir. 2004), and the public has a common law right of access to judicial documents, *United States v. Erie Cty.*, 763 F.3d 235, 239-40 (2d Cir. 2014). However, these rights of access are not without limitations.

The Second Circuit has outlined two approaches for determining whether the First Amendment right of access applies to a particular judicial document. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d. Cir. 2006). The first approach protects documents which have historically been open to the press and general public and where "public access plays a significant positive role in the functioning of the particular process in question." *Id*. The second approach considers the extent to which the documents are derived from, or a corollary to, a public proceeding. *Id*. Here, the second approach does

---

[9] Defendant Wood previously moved for disclosure of the affidavit as it related to the search of his residence at 2717 California Road, which the Government alleges served as a temporary clubhouse. Since that time, the Government has provided defendant Wood with a redacted affidavit and defendant has moved for suppression of items found at 2717 California Road. Thus, the Court treats his initial request for unsealing as moot.

not apply since neither the press nor public have the right or capacity to attend a search warrant application proceeding. *Hartford Courant*, 380 F.3d at 93. As to the first approach, public access to the affidavit would, at this time, reveal the identity of confidential informants and is likely to detrimentally affect any ongoing investigation as well as the current proceedings before this Court. For these reasons, the Court finds no First Amendment right of access to the affidavit at this time.

In evaluating a common law claim of access to judicial documents, a court should balance the weight of the presumption of access given to the particular document with the competing interest against disclosure. *Hillary v. Village of Potsdam*, 7:12-cv-1669 (GLS/DEP), 2015 U.S. Dist. LEXIS 25141 (NDNY March 3, 2015) (Sharpe, D.J.). Courts have held that the common law presumption of access to search warrants and related materials, which affect an individual's substantive rights, is entitled to great weight. *In re Sealed Search Warrants*, 2008 U.S. Dist. LEXIS 107711, at *3. However, the Court finds that this presumption is outweighed here by the Government's significant interest in protecting the integrity of the investigation and the identify of its informants. In general, a warrant and its supporting affidavit may be sealed upon application to a judicial officer and the decision of whether to seal an affidavit in support of a search warrant is left to the discretion of the court. *In re Application of Newsday, Inc.*, 895 F.2d 74 (2d Cir. 1990). On August 12, 2015, Magistrate Judge Schroeder, the issuing judicial officer, found good cause pursuant to Rule 41(d) of the Local Rules of Criminal Procedure to seal the search warrant affidavit until further order of the Court. This Court finds that good cause for sealing continues to exist since the affidavit contains extensive information about

individuals providing information in this case, which remains in a pretrial posture.[10]  The Court has already recognized that defendants are not entitled to disclosure of confidential informants, and an unsealing of the affidavit would directly contradict this finding.  *See Rovarios*, 353 U.S. at 60-64 (recognizing the "Government's privilege to withhold from disclosure the identity of persons who furnish information of violations of law to officers charged with enforcement of that law."); *United States v. Saltares*, 301 F. Supp. 2d 305, 307 (SDNY 2004) (denying defendant access to an unredacted search warrant application, where "the Court [was] unable to disagree with the Government's assertions that the redacted portions of the Affidavits would provide sufficient information to [the defendant] to enable him to identify the informant.")  Further weighing against unsealing of the affidavit is the Court's finding, as discussed in more detail below, that defendants have not sufficiently established standing to challenge the searches of the clubhouses.  Thus, any benefit to be gained by unsealing the affidavit is significantly outweighed by the Government and Court's interest in protecting the identify of confidential informants at this stage of the proceeding.

Defendants argue that any concern about retribution against witnesses may be mitigated through the use of a protective order or by releasing the affidavit for "attorney's eyes only."  Defendants also suggest that sensitive material may be redacted from the affidavit.  The Court finds these to be a reasonable suggestions in the event that defendants have standing to challenge the searches and seizures.  Otherwise, defendants have no practical need for this information and continued sealing does not prejudice them

---

[10]  While the informants are not named, the affidavits contains sufficient information that their identities would be easily ascertained.

in any way. *See United States v. Findley*, No. 09-CR-267A(Sr.), 2010 WL 4273919 (WDNY Oct. 28, 2010) (Schroeder, M.J.) ("Absent standing to challenge the search warrant for 468 Dartmouth Avenue, and without additional information from defendant as to the basis for the request of the application and affidavits, the defendant's request is denied without prejudice.") Likewise, without a showing of standing to challenge the warrants, the Court finds no need to conduct an *in camera* review of the affidavit for the purpose of determining whether there was a sufficient showing of probable cause.

Defendants Pirk, Enix, Scanlon and Caruso have not established standing to challenge the searches the premises referenced in the affidavit. Where a Fourth Amendment violation is claimed, a defendant seeking to have evidence suppressed must have a reasonable expectation of privacy in the location or items searched. *Rakas v. Illinois*, 439 U.S. 128, 143 (1978). Therefore, an individual challenging a search or seizure must manifest a subjective expectation of privacy, and that expectation must be one that is recognized by society as objectively reasonable. *Id*.[11] In *United States v. Gerena*, the Connecticut District Court held that a group of defendants was unable to establish standing with respect to a location based upon their claims that they were members of a organization, that the location was a secret controlled by the organization and that each

---

[11] The Court rejects any argument made by defendants that they have standing to challenge the searches of the clubhouses because they are charged, in the Indictment, with maintaining some or all of those premises for the purpose of drug trafficking. The Supreme Court has rejected its prior findings that defendants have automatic standing to challenge the search and seizure of items they are charged with possessing. *United States v. Salvucci*, 448 U.S. 83 (1980); *see also United States v. Vincent*, 12-CR-7S, 2013 U.S. Dist. LEXIS 33273 (WDNY March 11, 2013) (Scott, M.J.) ("[T]he Supreme Court eliminated automatic standing because...that court prohibited the use at trial of defendant testimony from suppression hearings...and permitted the Government to take the ostensibly contradictory position that a given defendant possessed items seized for the purpose of criminal liability but lacked standing to challenge the seizure for purposes of the exclusionary rule.") In accordance with this precedent, the fact that defendants are charged with maintenance of a drug premise would not, in itself, automatically confer standing as to that premise.

member conducted their activities there in private. 662 F. Supp. 1265 (D. Conn 1987). It was noted that defendants in *Gerena* failed to allege that "they resided at the...dwelling; that they owned it, or held any proprietary interest in it; that they visited it on a regular basis; that they each had a key to the premises; that they had the right to exclude others from entering the residence; that they used it as an office; or that they kept any personal belongs there." *Id*. Here, defendant Scanlon submitted an affidavit stating that he, along with other members of the KMC, renovated 122 East Pine Street (the Olean clubhouse) into a functioning clubhouse, and that both the meetings held there and the clubhouse itself were not open to the public. He avers that he had a reasonable expectation of privacy at the Olean clubhouse.[12] These assertions are insufficient to establish standing. Defendant does not indicate that he resided or worked at the Olean clubhouse, had an ownership or proprietary interest in the building, or that he stored personal items there. Further, his representation that others could enter the premises through an invitation by any KMC member demonstrates that Scanlon did not have the right to exclude others. Indeed, it would not be objectively reasonable for defendant to have an expectation of privacy in the clubhouse since it was frequented by all KMC members and any guests those members choose to bring. *See United States v. Gotti*, 771 F. Supp. 535 (EDNY 1991) (defendants lacked standing to challenge compliance with minimization requirements during a wiretap where they offered "no basis for permitting a finding that they have the requisite privacy, possessory or proprietary interests in the Ravenite Social Club to confer

---

[12] Defendant Scanlon does not make any averments as to his standing to challenge searches in the other clubhouses. The remaining defendants who have joined in Scanlon's motion for unsealing have not submitted affidavits in support of their standing to challenge the searches at any of the clubhouses.

standing beyond stating that it is a private club which the defendants frequented."); *United States v. Salerno*, S 86 Cr. 245 (MJL), 1987 U.S. Dist. LEXIS 1811 (SDNY March 10, 1987) (Lowe, D.J.) (defendants who did not have ownership interest in the Palma Boy Social Club lacked a cognizable privacy interest to challenge the government's compliance with the minimization requirements in a wire tap.)[13] For these reasons, defendants' motion for unsealing of, or access to, the affidavit in support of the search warrants is denied.

### Surplusage in Indictment

Defendants charged in the racketeering conspiracy (Count 1) move to strike paragraphs 2 through 24 of the Indictment, pursuant to Rule 7(d) of the Federal Rules of Criminal Procedure, on the grounds that the allegations contained therein are inadmissible at trial, inflammatory and prejudicial. The Government responds that the information will be admissible at trial, is relevant to establishing a racketeering enterprise, and is probative of the criminal conspiracy in general.

Upon a defendant's motion, the Court may strike surplusage from an indictment. *See* Fed. R. Crim. P. 7(d). However, the Second Circuit has consistently opined that motions to strike surplusage from an indictment are granted only when the challenged allegations are "not relevant to the crime charged and are inflammatory and prejudicial." *United States v. Scarpa*, 913 F.2d 993 (2d Cir. 1990) (internal citations omitted).

---

[13] The Court acknowledges that *Gotti* and *Salerno* involved challenges to minimization requirements with respect to wiretaps rather than searches of a premises. The Second Circuit has held that to have standing to challenge minimization during a wiretap, a defendant must show a direct privacy interest through a possessory or proprietary interest in the premises on which the telephone was located. *United States v. Fury*, 554 F.2d 522 (2d Cir. 1977); *United States v. Burford*, 755 F. Supp. 607 (SDNY 1991). The Court finds that the analysis and conclusions in *Gotti* and *Salerno*, which addressed whether defendants had privacy interests in social clubs of which they were not the owners, are relevant to whether defendants here had a reasonable expectation of privacy at the social club they frequented.

Moreover, "if evidence of the allegation is admissible and relevant to the charge, then regardless of how prejudicial the language is, it may not be stricken." *United States v. DePalma*, 461 F. Supp. 778, 797 (SDNY 1978); *accord Scarpa*, 913 F.2d at 56. In addition, the standard for striking surplusage is an exacting one, and motions to strike allegations in an indictment are rarely granted. *See also United States v. Smith*, 985 F. Supp. 2d 547, 610 (SDNY 2014) (internal citation marks and citations omitted).

Paragraphs 2 through 24, which are part of the racketeering conspiracy count, describe the history of the KMC including its locations, chain of command, general rules and objectives, and the various ways it is alleged to have carried out criminal activity. These allegations are directly relevant to the racketeering conspiracy charge because they explain the existence and structure of the criminal enterprise. In addition, examples of the criminal behavior discussed in paragraphs 2 through 24, including assaults, robbery, unlawful maintaining of firearms, drug distribution, gambling, and the sale of untaxed cigarettes, among other things, directly correspond to the alleged means and methods of the conspiracy as well as the 87 overt acts charged in Count 1 of the Indictment. *See Scarpa*, 913 F.2d at 56 (refusing to strike allegations, in a RICO case, referring to the "Columbo Family" even through it was not the enterprise charged, since the references helped identify the charged enterprise and the manner and means by which the members carried out criminal activity); *United States v. Prisco*, S1 08 Cr. 885 (NRB), 2009 U.S. Dist. LEXIS 16612 (SDNY February 11, 2009) (Buchwald, D.J.) (defendant's motion to strike portions of the indictment discussing the history, structure and activities of the Genovese crime family denied because "evidence concerning the existence, nature and structure of the Genovese crime family and La Cosa Nostra are relevant to proving the RICO

enterprise alleged in the case").  Evidence in support of the allegations in paragraphs 2 through 24, if presented in accordance with the Federal Rules of Evidence, will almost certainly be admissible at trial either as direct proof of the racketeering conspiracy or to establish the background of the conspiracy.  *See United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989) ("Evidence of uncharged criminal activity is [admissible] . . . if it arose out of the same transaction or series of transactions as the charged offense, if it [is] inextricable intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime [on] trial.")  Thus, while the allegations are indeed prejudicial, they have been properly included in the Indictment.

During oral argument, defense counsel specifically cited the inflammatory nature of paragraph 22, which alleges that girlfriends and wives of KMC members were referred to as "old ladies", followed club rules, and assisted KMC members in criminal and other activity.  Count 1 includes numerous allegations that associates of the KMC assisted in unlawful activity including concealing firearms or maintaining premises for drug distribution.  Moreover, two of the overt acts in Count 1 specifically allege participation by female associates.  In anticipation that there will be relevant and admissible testimony regarding the role of female associates in the crimes charged and their knowledge of KMC's activities, defendants' request to strike this paragraph is denied.

The Court additionally notes that an indictment is merely a series of allegations and juries are routinely instructed accordingly.  Moreover, "there is nothing in the law that requires submission of the indictment to the jury . . . [w]hile the court may elect to do so, the ultimate decision to submit in its entirety, or in some redacted form, will depend on the nature of the trial evidence when the time comes for making that decision."  *United States*

*v. Bruno*, 1:09-CR-29 (GLS), 2009 U.S. Dist. LEXIS 74278 (NDNY August 21, 2009) (Sharpe, D.J.)  For the reasons just stated, the Court finds no basis to strike paragraphs 2 through 24 of the Indictment at this time.  However, the trial court is undoubtedly in the best position to make a final determination as to whether the Indictment, or portions thereof, should be submitted to the jury.  For these reasons, the motion to strike surplusage is denied without prejudice to its renewal before Judge Wolford. *See United Stats v. Fancis*, 08-CR-6098L, 2008 WL 4426580, *2 (WDNY Sept. 25, 2008) (Larimer, D.J.) ("motion to strike surplusage is . . . denied without prejudice to renewal should the language objected to not be the subject of proof or a reasonable inference from a subject of proof").

### Defendant Pirk's Second Counsel

Defendant Pirk is charged with racketeering conspiracy, possession and discharge of firearms in furtherance of crimes of violence, two counts of murder in aid of racketeering, using and maintaining a premises for drug dealing, and possession of firearms in furtherance of drug trafficking.  Based upon these charges, defendant Pirk was initially eligible for a sentence of death and was assigned two attorneys pursuant to the Criminal Justice Act, one of whom is learned in death penalty cases.  On April 26, 2016, the Government notified the Court and defense counsel that it did not intend to seek the death penalty for any defendants in this case.  On June 9, 2016 the Court ruled, over the Government's objections, that both assigned counsel could continue to represent defendant Pirk through the filing of pretrial motions, and could then re-apply to continue representing him.  Defendant Pirk now requests that both assigned attorneys be permitted

to continue representing him.  The Government opposes the request and asks the Court to remove one assigned counsel.

Section 3005 of Title 18 of the United States Code provides that once the Government indicates that it will not seek the death penalty, a defendant is no longer required to be assigned a second counsel who is learned in death penalty cases.  Further, the Criminal Justice Act Guidelines indicate that after learning that the death penalty will not be sought, the court should make an appropriate reduction in the number of counsel unless there are extenuating circumstances.  *See Guidelines for the Admin. of Criminal Justice Act*, vol. VII, § A, ch. 6.02(B)(2).  Courts are instructed to consider: (1) the need to avoid disruption in the proceedings; (2) whether the decision not to seek the death penalty occurred late in the litigation; (3) whether the case is unusually complex; and (4) any other factors that would interfere with the need to ensure adequate representation.  *Id*.

Here, the Government notified defense counsel and the Court early in the case that it would not seek the death penalty against any of the eligible defendants.  However, other extenuating circumstances exist which support the continuation of two assigned counsel.  The case is certainly complex.  It involves a 46-count Indictment which includes a racketeering conspiracy consisting of 87 overt acts.  At present, discovery involves over 90,000 pages of material, in addition to voluminous transcripts from the state court trial of defendant Jenkins for the murders of Maue and Szymanski.  The Court previously allowed both of Pirk's attorneys to remain in the case through the filing of motions due to the volume of discovery as well as the seriousness and complexity of the charges.  That need has not dissipated and will likely only increase as the case moves forward to trial.

Moreover, counsel involved here are experienced defense attorneys who indicate that they are dividing the work between themselves, rather than duplicating efforts. Therefore, a reduction of counsel is unlikely to have a tangible impact on the cost of Pirk's defense. In fact, since the attorneys divided the work on the pretrial motions, reduction of counsel now would likely result in the remaining attorney investing more time and effort in learning issues that had been previously been handled by his or her co-counsel. Finally, both this Court and the District Court have indicated that they will do everything in their power to expediently move this case to resolution. This objective is important to all defendants, who are facing very serious charges, and is especially significant to those defendants in pretrial detention. Allowing a defendant who faces the most serious of charges to continue with a second counsel will aid this goal.

For these reasons, defendant Pirk's request to continue with his second assigned counsel is granted.

### *Rule 404(b) and Impeachment Evidence*

Defendants move for disclosure of any evidence of prior crimes or bad acts the Government intends to introduce at trial pursuant to Federal Rule of Evidence 404(b). Defendants also move for pretrial disclosure of impeachment evidence pursuant to Federal Rules of Evidence 608 and 609. The Government responds that it will disclose this evidence, if it exists, at the time it is required to do so by the trial court.

The Government is required to provide "reasonable notice in advance of trial" of the general nature of prior uncharged crimes or bad acts it intends to introduce against a defendant. *See* Fed. R. Evid. 404(b). Rule 608 of the Federal Rules of Evidence does

not contain the same required pretrial notice. Based upon the Government's representation that it will disclose Rule 404(b) and impeachment evidence at the time it is required to do so by the District Court, defendants' motion is denied as moot. The issue of admissibility of such evidence is left to the determination of Judge Wolford at the time of trial.

### Co-Conspirator Statements

Defendants move for notice and/or a hearing as to the co-conspirator statements the Government intends to introduce at trial pursuant to Federal Rule of Evidence 801(d)(2)(E). Defendants also move for the exclusion of any co-conspirator statements that would violate *Bruton v. United States*, 391 U.S. 123, 135-137 (1968) (the admission of a co-defendant's "powerfully incriminating extrajudicial statements" during a joint trial of a non-testifying accomplice violated the Confrontation Clause); *c.f. Richardson v. Marsh*, 481 U.S. 200 (1987) (the Confrontation Clause is not violated by the admission of a non-testifying co-defendant's confession with a proper limiting instruction when the confession is redacted to eliminate not only the victim's name, but also any reference to his or her existence.")

Rule 16 does not provide for the disclosure of co-conspirator statements. To the extent that the statements in question constitute either 3500, *Giglio*, or *Brady* material, those statements will be disclosed in accordance with the procedure discussed above. Otherwise Federal Rule of Evidence 801(d)(2)(E) does not contain a requirement as to pretrial notice of statements, and the admissibility of any such statements, all well as any *Bruton* implications, are best addressed by the trial court. Therefore, defendants' motion

for disclosure of co-conspirator statements is denied, without prejudice for defendants to renew their requests for before Judge Wolford.  *See United States v. Anguiera*, 11-CR-116(S); 2012 U.S. Dist. LEXIS 51862 (WDNY April 12, 2012) (Scott, M.J.) ("[T]he relief sought for excluding non-testifying co-conspirator statements...[is] better considered by the District Judge prior to trial and are deferred for that consideration.")

### Request for Grand Jury Transcripts and Evidence

Defendants move for production of grand jury transcripts, an inspection of all evidence and testimony considered by the grand jury, and all ministerial documents related to grand jury proceedings in this case.  The Government indicates that any defendants who testified before the grand jury have been provided with a recording of their testimony.  In addition, the Government represents that it will disclose any grand jury testimony that constitutes 3500, *Brady* or *Giglio* material.  Notwithstanding this material, defendants are not entitled to inspect grand jury minutes and evidence without producing "concrete allegations of government misconduct."  *United States v. Leung*, 40 F.3d 577, 582 (2d Cir. 1994).  Defendants have not made any such allegations here.  Therefore, to the extent that defendants request grand jury material besides their own testimony or 3500, *Brady* or *Giglio* material, their request is denied.

### Request for Plea Agreement and Pre-Sentence Reports

Defendants move for disclosure of any co-defendants' plea agreements that exist now or are in existence at the time of trial.  The Government indicates that, pursuant to its obligations under *Jencks* and *Giglio*, it will produce plea agreements, proffer agreements, cooperation agreements and any similar document pertaining to testifying witnesses.  The

Government objects to producing plea agreements of any non-testifying co-defendants unless they contain *Brady* material. Defendants have not requested the plea agreement of any specific individual and refer only to the plea agreements of other defendants in general. To the extent that defendants are requesting plea agreements that they would not otherwise receive pursuant to *Jencks*, *Giglio*, or *Brady*, their request is denied without prejudice to be renewed in the event that defendants can articulate a specific agreement and its relevancy to this case and their defense.

Defendants also request that the Court conduct an *in camera* review of witnesses' presentence reports or pretrial service reports for exculpatory or impeachment material. The Government does not object to an *in camera* review, by the trial court, of cooperating witnesses' presentence and pretrial services reports. Thus, defendants' motion is denied as moot. The Court notes that the review should be conducted by the trial court, who will have the benefit of a witness list and a more detailed explanation of the testimony and evidence to be offered. *See United States v. Moore*, 949 F.2d 68 (2d Cir. 1991) ("If a co-defendant requests the presentence report of an accomplice witness, the district court should examine the report *in camera* to determine if there are any statements made by the witness that contain exculpatory or impeachment material.")

However, the Government does object to such a review as it pertains to non-cooperating individuals. Here again, defendants do not name specific reports to be disclosed, other than those of co-defendants who have pled guilty. Like the plea agreements, it is premature to determine what additional pretrial service reports or presentence reports, other than those of testifying witnesses, may merit an *in camera*

review. Likewise, the trial court is in a better position to conduct such a review. To the extent that defendants request the pretrial service reports or presentence reports of non-testifying individuals, their request is denied without prejudice to their ability to make a more specific request to Judge Wolford.

### Preservation of Rough Notes

Defendants move for an order requiring all federal, state or local agents and officers who participated in the investigation to retain and preserve all rough notes taken as part of their investigation, regardless of whether they were incorporated into a formal report. The Government indicates that it has instructed agents to incorporate all notes into formal reports, and that it has already provided defendants with some reports and investigative notes. The Court grants defendants' motion and directs the Government to arrange for the preservation of all rough notes and related information pending further instruction from Judge Wolford at trial.

### Other Requests

Defendants move for disclosure of any evidence the Government intends to offer pursuant to Federal Rule of Evidence 807, the residual hearsay exception. This request is denied as moot since the Government states that it does not presently intend to offer evidence under Rule 807. Defendants request any Title III orders, mail covers, and mobile tracking devices and the results thereof. This request is also denied as moot since the Government indicates that none of these investigative techniques were used in this case.

Defendant Stacharczyck moves for the production of mental health records and evaluations of Government witnesses. The Government is not in possession of any such

records and the request is denied as moot.[14]  Defendant Stacharczyck also moves for

disclosure of identification procedures and a *Wade* hearing.  The Government responds

that any pretrial identification procedures will be disclosed but that in-court identifications

of defendant Stacharczyck are anticipated to be made by law enforcement and current or

former KMC members, who have had extensive prior contact with defendant.  Defendant

Stacharczyck's motion for a *Wade* hearing is denied without prejudice to his ability to

renew his request with a specific showing as to the basis for the hearing.  Defendant

Williams requests that electronic documents be produced in the format in which they were

obtained, or in some other reasonably useable format.  There does not appear to be any

problem with defendants' reading or accessing documents produced by the Government,

and this request is also denied as moot.

### Leave to File Additional Motions

Defendants make a general request for leave to file further motions.  The

Government responds that the request should be denied without prejudice.

To the extent that defendants intend to bring motions based upon new information

or evidence that has not yet been disclosed, their request for leave to file additional

motions is granted.  To the extent that defendants intend to bring motions concerning

issues that could have been raised prior to the previous motion deadline, defendants'

request is denied without prejudice to bring the motion upon a showing of good cause for

the untimely filing.

---

[14]  The Government indicates that to the extent it becomes aware of any mental health records as impeachment material, they will be provided to the Court for *in camera* review.

*Reciprocal Discovery*

The Government moves for reciprocal discovery pursuant to Rule 16(b) of the Federal Rules of Criminal Procedure. The Government requests that it be permitted: (1) to inspect and copy books, papers, documents, photographs, tangible objects, or copies of portions thereof which are in the possession, custody or control of any defendant and which that defendant intends to introduce as evidence at trial; (2) to inspect and copy any results or reports of physical or mental examinations and/or of scientific tests or experiments made in connection with this case within the possession or control of any defendant which that defendant intends to introduce as evidence at trial or which was prepared by a witness whom the defendant intends to call at the trial when the results or tests relate to that testimony; and (3) advance disclosure of any statements the defendant proposes to utilize at trial pursuant to Rule 807 of the Federal Rules of Evidence. The Government's request for reciprocal discovery is granted.

**SO ORDERED.**


DATED:      April 24, 2017
            Buffalo, New York


                                              /s/ Michael J. Roemer
                                              MICHAEL J. ROEMER
                                              UNITED STATES MAGISTRATE JUDGE