UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK



_____

UNITED STATES OF AMERICA,

        v.

DAVID PIRK, ANDRE JENKINS a/k/a Little Bear,
TIMOTHY ENIX a/k/a Blaze, FILIP CARUSO
a/k/a Filly, EDGAR DEKAY, II a/k/a Ed a/k/a
Special Ed, JASON WILLIAMS a/k/a Toop,
THOMAS KOSZUTA a/k/a Kazoo, GREGORY
WILLSON a/k/a Flip, EMMETT GREEN, ROBERT
OSBORNE, JR., STANLEY OLEJNICZAK,
JACK WOOD a/k/a Jake a/k/a Snake, RYAN
MYRTLE, GLEN STACHARCZYCK a/k/a Turbo,

        Defendants,

THOMAS SCANLON a/k/a Tom, and
SEAN MCINDOO a/k/a Professor,

        Defendants-Appellants.

_____

**DECISION AND ORDER**

1:15-CR-00142 EAW

## **INTRODUCTION**

The above-captioned matter involves 12 remaining defendants[1] named in a 46-count

Second Superseding Indictment (Dkt. 33) ("Indictment") returned on March 16, 2016,

alleging various crimes, including a conspiracy in violation of the Racketeer Influenced

and Corrupt Organizations Act, 18 U.S.C. §§ 1961 *et seq.* ("RICO"), in connection with

the operation of the Kingsmen Motorcycle Club ("KMC").  This Decision and Order

_____

[1]    Four Defendants—Edgar Dekay, II a/k/a Ed a/k/a Special Ed (Dkt. 412), Thomas
Koszuta a/k/a Kazoo (Dkt. 296), Emmett Green (Dkt. 257), and Ryan Myrtle (Dkt. 330)—
have pleaded guilty.

addresses the appeals of defendants Thomas Scanlon ("Scanlon") (Dkt. 615) and Sean McIndoo ("McIndoo") (Dkt. 616) (collectively "Defendants") from United States Magistrate Judge Michael J. Roemer's Decision and Order (Dkt. 568) that denied the motions to unseal an affidavit filed in August 2015, in support of search warrants for seven KMC clubhouses.[2] For the reasons set forth below, the Court affirms Judge Roemer's Decision and Order, and denies Defendants' requests to unseal the search warrant affidavit.

## BACKGROUND

On December 7, 2016, Scanlon filed an omnibus pretrial motion, requesting, *inter alia*, the unsealing of the search warrant affidavit submitted in support of search warrants executed at seven KMC clubhouses. (Dkt. 385 at 33-37). On January 10, 2017, the Government responded in opposition to Scanlon's motion. (Dkt. 437). On February 3, 2017, Scanlon filed a reply. (Dkt. 476).

On December 7, 2016, McIndoo filed an omnibus pretrial motion. (Dkt. 383). On January 11, 2017, he moved to join in the motions of his co-defendants (including David Pirk ("Pirk") and Scanlon)[3] to unseal the search warrant affidavit. (Dkt. 438). On January

---

[2] The Court previously issued a Decision and Order (Dkt. 708) denying the appeals of defendant David Pirk, Scanlon, and McIndoo with respect to other aspects of Judge Roemer's Decision and Order filed at Docket 568, but reserved on the issue concerning the search warrant affidavit. (Dkt. 708).

[3] Defendants Timothy Enix and Filip Caruso also moved to unseal the affidavit. (Dkt. 392-7 at 35 (Enix); Dkt. 467 at ¶¶ 45-48 (Caruso)). Further, as noted by Judge Roemer, each defendant moved to join the discovery motions of his co-defendants, and Judge Roemer concluded that his Decision and Order applied to all other defendants, to the extent applicable. (Dkt. 568 at 3). However, no defendant other than Scanlon and McIndoo filed an appeal from Judge Roemer's Decision and Order concerning the search warrant affidavit.

20, 2017, the Government responded in opposition to McIndoo's motion for discovery. (Dkt. 454). McIndoo replied on February 3, 2017 (Dkt. 475), and the Government filed an additional response in opposition to the remainder of his pretrial motions on February 10, 2017. (Dkt. 492).

Oral argument concerning non-dispositive discovery motions was held on March 17, 2017, before Judge Roemer (Dkt. 536), to whom this Court referred certain pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) (Dkt. 35). On April 25, 2017, Judge Roemer issued a Decision and Order resolving the non-dispositive discovery motions. (Dkt. 568).

On May 10, 2017, this Court issued a Text Order requiring any appeals of Magistrate Judge Roemer's Decision and Order to be filed by May 30, 2017. (Dkt. 583). On May 30, 2017, Scanlon timely filed an appeal of Judge Roemer's Decision and Order. (Dkt. 615). On May 31, 2017, McIndoo filed his appeal. (Dkt. 616). The Government filed its memoranda in opposition to the appeals on June 28, 2017. (Dkt. 649 (Scanlon Opp.); Dkt. 651 (McIndoo Opp.)). Scanlon filed a reply in further support of his appeal on July 14, 2017 (Dkt. 675), followed by a notice of supplemental authority on July 19, 2017 (Dkt. 677). The Government filed a response to the supplemental authority on July 20, 2017, as well as a motion to strike the supplemental authority, which the Court denied. (Dkt. 683; Dkt. 687). McIndoo filed a reply on July 25, 2017. (Dkt. 694). Oral argument was held before the undersigned on August 16, 2017, at which time the Court reserved decision. (Dkt. 732).

# DISCUSSION

Because Defendants appeal to this Court from a non-dispositive Decision and Order,

in order to warrant reversal by this Court, they must demonstrate that the decision is

"clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A). "A finding is clearly

erroneous when although there is evidence to support it, the reviewing court on the entire

evidence is left with the definite and firm conviction that a mistake has been committed."

*United States v. Feneziani*, No. 05-CR-290E, 2007 WL 1613630, at *1 (W.D.N.Y. June 1,

2007) (quoting *Garcia v. Teitler*, 443 F.3d 202, 211 (2d Cir. 2006)). "This standard is

highly deferential, imposes a heavy burden on the objecting party, and only permits

reversal where the magistrate judge abused his discretion." *Centro De La Comunidad*

*Hispana De Locust Valley v. Town of Oyster Bay*, 954 F. Supp. 2d 127, 139 (E.D.N.Y.

2013) (quotations omitted); *see also S.E.C. v. Verdiramo*, 890 F. Supp. 2d 257, 266

(S.D.N.Y. 2011) ("The clearly erroneous standard is highly deferential, and magistrate

judges are afforded broad discretion in resolving non-dispositive disputes. . . ." (quotation

omitted)).[4]

---

[4]     Although Scanlon correctly cites the standard of review as the highly deferential
clearly erroneous standard (Dkt. 615 at 10), McIndoo argues (as he has before with other
non-dispositive decisions by the magistrate judge (*see* Dkt. 327 at 4 n. 4)), that this Court
must review Judge Roemer's Decision and Order *de novo*. According to McIndoo, *de novo*
review is required because the denial of the request to unseal the warrant affidavit "is the
equivalent of the denial of a motion to suppress, not a denial of discovery" and purportedly
relates to the effective assistance of counsel. (Dkt. 616 at 16, 21). McIndoo cites no legal
authority supporting his position, and his argument is unpersuasive. McIndoo has not filed
a suppression motion—rather, he seeks discovery related to a potential suppression motion.
A discovery decision, such as this, is non-dispositive, and therefore *de novo* review is not
applicable. *See United States v. Longo*, 70 F. Supp. 2d 225, 238 (W.D.N.Y. 1999)
(magistrate judge decision concerning defendant's request for discovery related to search

Scanlon and McIndoo argue that the warrant affidavit must be provided under the Fourth Amendment. In addition, Scanlon contends that he is entitled to the affidavit under the First Amendment and the common law. The Court takes each argument in turn.

## I.    **Fourth Amendment**

Defendants seem to concede that standing is required to bring a Fourth Amendment challenge to the sealing of the underlying search warrant affidavit. (*See* Dkt. 615 at 17 (arguing that because Scanlon has standing, he has a Fourth Amendment right to examine the search warrant affidavit); Dkt. 616 at 16-21 (same as to McIndoo)). Indeed, Defendants present no caselaw that suggests that one who lacks standing to contest a search warrant still has a Fourth Amendment right to examine a search warrant affidavit. Standing is plainly a prerequisite to bringing a challenge pursuant to *Franks v. Delaware*, 438 U.S. 154

---

reviewed under clearly erroneous standard). Indeed, just because the issue at play *potentially* relates to a dispositive issue, such as suppression, does not mean that the reviewing court must conduct a *de novo* review of all aspects of the decision. *Cf. United States v. Basciano*, 634 F. App'x 832, 837 (2d Cir. 2015) (decision not to conduct evidentiary hearing on suppression motion reviewed for abuse of discretion). In any event, for the reasons discussed below, the Court finds that McIndoo's argument in support of his request for the search warrant affidavit is flawed, and therefore, even if the standard of review was *de novo*, it would reach the same conclusion concerning McIndoo's argument.

The Court does acknowledge that, while not specifically advanced by either McIndoo or Scanlon, there is a potential argument that Judge Roemer's decision concerning standing should be reviewed *de novo*. When a decision concerning standing is made in the context of a motion to suppress, it is typically reviewed by the district court *de novo*. *See, e.g.*, *United States v. Molina-Rios*, Case #15-CR-122-FPG, 2017 WL 279554, at *2 (W.D.N.Y. Jan. 23, 2017) (reviewing objection to magistrate judge's finding concerning standing to contest search *de novo*); *United States v. Sykes*, No. 05-CR-6057, 2006 WL 2711460, at *3 (W.D.N.Y. Sept. 20, 2006) (same). Neither party has cited any caselaw addressing the standard of review for a determination concerning standing when no dispositive motion is pending. Nonetheless, this Court would reach the same conclusion as Judge Roemer concerning standing of both Scanlon and McIndoo, even pursuant to a *de novo* standard of review.

(1978). *United States v. Tranquillo*, 606 F. Supp. 2d 370, 376 (S.D.N.Y. 2009) (citing *United States v. Mastromatteo*, 538 F.3d 535, 544 (6th Cir. 2008)) (analyzing whether the defendant had standing to request a *Franks* hearing and to contest the legality of a search). In other words, to gain access to the search warrant affidavit pursuant to the Fourth Amendment, Defendants must have a legitimate Fourth Amendment right in the property searched—or, in other words, standing to challenge the searches of the clubhouses at issue.

Although the Second Circuit does not appear to have addressed whether there is a Fourth Amendment right to examine a search warrant affidavit, other federal courts have recognized such a right. *See Rinaldi v. City of New York*, No. 13 Civ. 4881(LAK)(JLC), 2014 WL 2579931, at *4 (S.D.N.Y. June 10, 2014) (citing out-of-circuit caselaw in support of notion that Fourth Amendment provides right to inspect affidavit to one who challenges the issuance of the warrant, but noting that the Second Circuit has not addressed the issue directly), *report and recommendation adopted*, 2014 WL 4626076 (S.D.N.Y. Sept. 15, 2014); *see also United States v. Hawit*, 15-cr-252 (PKC), 2017 WL 3016794, at *2 n.3 (E.D.N.Y. July 14, 2017) (citing *Rinaldi* for the proposition that the Second Circuit has not addressed whether there is a Fourth Amendment right to access search warrant materials).

In one such out-of-circuit case, *In re Search Warrants Issued on April 26, 2004*, 353 F. Supp. 2d 584 (D. Md. 2004), the district court stated that "[t]he common law right of access to a search warrant affidavit by a newspaper"—discussed in detail below—"pales in comparison to the rights of a property owner subject to a search and seizure by government agents." *Id.* at 587. It reasoned that the right of access flows from the language of the Fourth Amendment itself:

By its plain words, the Amendment insulates the public from "unreasonable" intrusions and sets forth the specific requirement that search warrants be supported by probable cause. Implicit in that language is the public's right to challenge both the reasonableness of the search and the degree to which the warrant was supported by probable cause. Without the right of access to the affidavit on which the search warrant was based, the search subject could *never* make such a challenge.

*Id.* at 588. "While the government is free to lawfully exercise its power to execute search warrants, the persons against whom that awesome power is unleashed at least have the right to discover the basis for the exercise." *Id.* at 590; *cf. United States v. Oliver*, 208 F.3d 211 (Table), 2000 WL 263954, at *2 (4th Cir. Mar. 9, 2000) (holding that right of defendant under Fourth Amendment to examine affidavit that supports a warrant is not absolute, and right of access may be denied where Government demonstrates a compelling governmental interest that requires the materials be kept under seal and there is no less restrictive means than sealing, such as redaction, available). Because this appears to be an open question in the Second Circuit, the Court assumes—without deciding—that one with standing to challenge a search warrant has a Fourth Amendment right to access search warrant application materials.

Of course, Fourth Amendment rights attach only to places and things in which the individual challenging the search has "an expectation of privacy that society is prepared to consider reasonable." *O'Connor v. Ortega*, 480 U.S. 709, 715 (1987) (citation omitted); *see, e.g.*, *Rakas v. Illinois*, 439 U.S. 128, 143 (1978) ("[C]apacity to claim the protection of the Fourth Amendment depends not upon a property right in the invaded place but upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place."). "It has been clear for a generation that

'Fourth Amendment rights are personal rights that may not be vicariously asserted.'"

*United States v. Haqq*, 278 F.3d 44, 47 (2d Cir. 2002) (alterations omitted) (quoting *Rakas*,

439 U.S. at 133-34); *see, e.g., United States v. Osorio*, 949 F.2d 38, 40 (2d Cir. 1991) ("The

party moving to suppress bears the burden of establishing that his own Fourth Amendment

rights were violated by the challenged search or seizure."). "In evaluating [standing]

claims, the court generally considers whether the defendant had any property or possessory

interest in the place searched or the items seized." *Osorio*, 949 F.2d at 40. The burden is

on the defendant to show that he has a reasonable expectation of privacy. *Rawlings v.*

*Kentucky*, 448 U.S. 98, 104 (1980); *see also United States v. Cruz*, 475 F. Supp. 2d 250,

253 (W.D.N.Y. 2007) ("The burden of establishing the existence of a reasonable

expectation of privacy rests on the defendant.").

A.   **Scanlon Fails to Show a Reasonable Expectation of Privacy in the KMC**
     **Olean Chapter Clubhouse.**

One of the KMC clubhouses searched pursuant to a warrant issued based on the

affidavit that is the subject of Defendants' appeal was the clubhouse located at 122 East

Pine Avenue in Olean, New York (the "KMC Olean Chapter clubhouse"). Scanlon argues

that he had a subjective expectation of privacy in the KMC Olean Chapter clubhouse. (*See*

Dkt. 615 at 11). Scanlon also argues that his expectation is objectively reasonable because

he was freely able to use the clubhouse and to exclude others from using it. (*Id.*). Judge

Roemer found that Scanlon's expectation of privacy was not one that society was prepared

to accept as reasonable. (Dkt. 568 at 18-20). Specifically, Judge Roemer concluded that

Scanlon—who neither owned nor worked at the clubhouse, and who did not have the right

to exclude guests of other KMC members—failed to establish standing sufficient to challenge the search warrant. (*Id.*).

In support of his claimed privacy interest in the KMC Olean Chapter clubhouse, Scanlon submitted a declaration containing only the barest of statements concerning his alleged interest in the clubhouse. The declaration stated that Scanlon was a member of the KMC when the search warrant was executed on August 26, 2015, and that sometime in 2012, he and other members "worked to renovate the premises into an operating clubhouse." (Dkt. 476-1 at ¶¶ 11, 13). It further stated that the clubhouse is not open to the public, that he attended meetings at the clubhouse that were not open to the public, and that only those with an invitation from a KMC member could enter. (*Id.* at ¶¶ 14-15). Scanlon did not testify at the evidentiary hearing held before Judge Roemer. (*See* Dkt. 631; Dkt. 632; Dkt. 633).

Scanlon does not claim that he had any property interest in the clubhouse. (*See* Dkt. 476-1). Nonetheless, this does not defeat Scanlon's claimed privacy interest because a property interest is not required to establish a Fourth Amendment right of privacy. *See United States v. Hamilton*, 538 F.3d 162, 169 (2d Cir. 2008) ("There is no authority for the proposition that one need live in the premises, or exercise control over them, in order to enjoy a privacy interest in those premises. . . . Nor has possession of a key or a deed or lease in one's own name been deemed indispensable to establishment of a privacy interest, where the claimant's understanding with those in charge of the premises was the basis of the expectation of privacy.").

> [O]ne who, with permission of the owner, is in possession of and has complete dominion and control over a residence that is not his own home, and can exclude others from it can have a legally sufficient interest so that the Fourth Amendment protects him from unreasonable governmental intrusion into that place. A person who possesses personalty belonging to another and who has the right to exclude third persons from possession of that property has an interest that is likewise protected.

*United States v. Perea*, 986 F.2d 633, 640 (2d Cir. 1993) (internal quotation marks and citations omitted); *see, e.g.*, *United States v. Ochs*, 595 F.2d 1247, 1253 (2d Cir. 1979) (finding that because the defendant had "complete dominion and control" over a borrowed vehicle, he had standing to challenge a search of the car).

Scanlon makes a great deal out of his purported right to exclude others from entering the clubhouse. (*See* Dkt. 615 at 13-14). However, his declaration provides only a general statement regarding KMC members' right to exclude: "Unless you were a member of the KMC you could not enter the clubhouse without an invitation from a current member." (Dkt. 476-1 at ¶ 14). Scanlon does not state that *he* could prevent the entry of an invitee or another KMC member, or whether he ever *exercised* his claimed right to exclude. Even assuming Scanlon's assertions are true and even drawing all *reasonable* inferences from those assertions, *see Hamilton*, 538 F.3d at 168 (requiring the district court to "credit the facts [the defendant] asserted" and view them in the light most favorable to the defendant), the affidavit lacks sufficient information from which the Court could find that Scanlon had a reasonable expectation of privacy in the KMC Olean Chapter clubhouse. In effect, Scanlon's statements regarding the KMC Olean Chapter clubhouse are no different than the alleged privacy interest of a member of any other private club. One who merely frequents a private club does not have standing to challenge a search of that premises.

*United States v. Gotti*, 771 F. Supp. 535, 549 (E.D.N.Y. 1991); *see also United States v. Gambino*, 809 F. Supp. 1061, 1069 (S.D.N.Y. 1992) (adopting the *Gotti* court's reasoning in suppressing the same search warrant, as applied to a different defendant); *cf. United States v. Salerno*, No. S 86 Cr. 245 (MLJ), 1987 WL 7934, at *5 (S.D.N.Y. Mar. 10, 1987) (ownership in private club may confer standing).

Scanlon claims that the Second Circuit's decision in *Hamilton* supports his claim. (Dkt. 615 at 12-14). In that case, the district court was reversed as to the defendant's standing to challenge the search of a home.[5] *Hamilton*, 538 F.3d at 170. The defendant proffered that he had paid for the house, which was registered in his wife's name. *Id.* at 168. The defendant could come and go as he pleased, and went there "two to three times a week for years." *Id.* The Second Circuit found that the defendant "ha[d] not only free and frequent access, but also probably effective control, and a solid expectation of privacy at the [house]." *Id.*

The facts here are dissimilar. The property at issue is not a home, but a clubhouse used as a commercial establishment. The Constitution recognizes the importance of privacy in a home, U.S. Const. amend. IV ("The right of the people to be secure in their persons, *houses*, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." (emphasis added)), and the Supreme Court has repeatedly found that homes deserve greater protection than other places. *See Florida v. Jardines*, 569 U.S. 1, 6

---

[5]    *Hamilton* appears to have involved a warrantless search, and, therefore, has no bearing on the baseline question of whether Scanlon must have access to the search warrant affidavits in this case. *See Hamilton*, 538 F.3d at 165-66.

(2013) ("[W]hen it comes to the Fourth Amendment, the home is first among equals. At the Amendment's 'very core' stands 'the right of a man to retreat into his own home and there be free from unreasonable governmental intrusion.'" (quoting *Silverman v. United States*, 365 U.S. 505, 511 (1961)); *Wilson v. Layne*, 526 U.S. 603, 610 (1999) ("The Fourth Amendment embodies this centuries-old principle of respect for the privacy of the home. . . ."); *United States v. U.S. Dist. Court for E. Dist. of Mich.*, 407 U.S. 297, 313 (1972) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed. . . ."). Scanlon does not provide any evidence that he helped purchase the clubhouse. His declaration fails to provide any information regarding how frequently he visited the clubhouse. And, as the Government points out, Scanlon provides the Court with no information as to whether he had a key to the clubhouse, ever slept there, or stored personal belongings there. (*See* Dkt. 648 at 7-8). Thus, the facts underlying the Second Circuit's decision in *Hamilton* are inapposite to those at issue in this case.

In sum, Scanlon failed to establish his standing to challenge the warrant because he has not put forth sufficient information from which the Court could find he has an objectively reasonable expectation of privacy in the clubhouse, and as a result, he has no Fourth Amendment right to access the affidavit.

**B.  McIndoo Fails to Show a Reasonable Expectation of Privacy in the KMC South Buffalo Chapter Clubhouse.**

McIndoo argues that Judge Roemer erred in failing to recognize his alleged standing. (Dkt. 616 at 16-21). McIndoo did not provide *any* affidavit or testimony

- 12 -

suggesting that he had a cognizable property or privacy interest in any of the properties searched pursuant to the search warrant. Instead, McIndoo claims that because he is charged in Count 45 with using and maintaining a premises for drug dealing, in violation of 21 U.S.C. § 856(a)(1) and 18 U.S.C. § 2, and in Count 46 with possession of firearms in furtherance of the drug trafficking crime alleged in Count 45, in violation of 18 U.S.C. §§ 924(c)(1)(A)(i) and 2, he has standing to challenge the searches of the location at issue in those counts: the KMC South Buffalo Chapter clubhouse located at 846/850 East Eagle Street in Buffalo, New York. (*Id.* at 16-21). This standing flows, according to McIndoo, from the Government's decision to charge him with criminal activity at the KMC South Buffalo Chapter clubhouse based solely on his membership in the KMC. (*Id.*). In the Decision and Order, Judge Roemer rejected this argument, citing Supreme Court precedent that stands for the idea that defendants do not have standing to challenge a search and seizure of items just because they are charged with possession of that item. (Dkt. 568 at 18 n.11 (citing *United States v. Salvucci*, 448 U.S. 83 (1980)).

At the outset, the Court notes that McIndoo fails to cite a single case supporting his argument that being charged with maintaining a premises for drug dealing (and related firearm activity) automatically confers standing to challenge a warrant to search that location. (*See* Dkt. 616 at 16-21). McIndoo claims that the Government is proceeding on a new theory of criminal liability—that membership in an organization is sufficient to establish criminal liability.[6] (*See id.* at 18).

---

[6]    The Court already rejected McIndoo's reliance on this argument in support of his motion to dismiss Counts 45 and 46. (Dkt. 688 at 37-38).

"[T]he Fourth Amendment protects people, not places." *Katz v. United States*, 389 U.S. 347, 351 (1967). In *Salvucci*, the Supreme Court held that the "possession of a seized good [is not] a substitute for a factual finding that the owner of the good had a legitimate expectation of privacy in the area searched." 448 U.S. at 92. The Supreme Court explicitly rejected the idea that being charged with a crime automatically established standing to challenge a search or seizure. *Id.* at 95 ("[T]he automatic standing rule of *Jones* [*v. United States*, 362 U.S. 257 (1960),] has outlived its usefulness in this Court's Fourth Amendment jurisprudence. The doctrine now serves only to afford a windfall to defendants whose Fourth Amendment rights have *not* been violated."). The exclusionary remedy was thus limited "to defendants who have been subjected to a violation of their Fourth Amendment rights." *Id.*

McIndoo argues that *Salvucci* does not apply here because this case is not about possession; rather, it is about maintenance of a drug premises and that the "charges implicate a connection to the premise [sic] itself sufficient to establish an interest in privacy in the premises." (Dkt. 616 at 18-19). Actually, contrary to McIndoo's argument, Count 46 is about possession—possession of a firearm in furtherance of the drug trafficking crime alleged in Count 45. Moreover, although *Salvucci* involved a charge of unlawful possession, that fact alone does not suggest that its holding is limited to cases involving possession. Indeed, nothing in the decision suggests such a narrow reading applies.

McIndoo has not presented a single case that supports his reading of *Salvucci*, and caselaw suggests that he is wrong. In *United States v. Walsh*, 654 F. App'x 689 (6th Cir. 2016), the Sixth Circuit upheld the district court's finding that the defendant had no

standing to challenge a search warrant, even though the defendant had been charged with maintaining the place searched as a drug premises under § 856. *Id.* at 704; *see also United States v. Jenkins*, 1:14-cr-00072-PLM-1, Dkt. 191 at 4-9 (W.D. Mich. Oct. 30, 2014) (showing second superseding indictment Counts 3-8, which are the § 856 charges at issue in *Walsh*). Similarly, in *Shamaeizadeh v. Cunigan*, 338 F.3d 535 (6th Cir. 2003), the civil plaintiff had earlier been charged with maintaining a drug premises under § 856. *Id.* at 543. The "drug premises" at issue consisted of a basement apartment in a building owned by the plaintiff. *Id.* at 540-41. The plaintiff had a proprietary interest in the basement apartment, but he "maintained [it] as a separate residence, indicating that he was not in possession of the basement." *Id.* at 545. The Sixth Circuit found that the plaintiff lacked a reasonable expectation of privacy in the basement apartment, and, therefore, had no standing to challenge a warrant to search the apartment for which he was later charged with maintaining as a drug premises. *Id.*

Put simply, McIndoo's automatic standing arguments fail as a matter of law. He has not put forth any evidence from which the Court can find that he has a subjective *or* objective privacy interest in any of the properties searched. *See Osorio*, 949 F.2d at 40. Therefore, he has failed to establish standing sufficient to challenge the warrant, and thus has no right to access the affidavit pursuant to the Fourth Amendment.

## II. Right of Access to Judicial Documents

Separate and apart from any Fourth Amendment right of access, Scanlon[7] argues that he has rights under the First Amendment and common law to examine the warrant affidavit because it is a judicial document. (Dkt. 615 at 17-29). The search warrant affidavit at issue is, without question, a judicial document. *See United States v. All Funds on Deposit at Wells Fargo Bank in S.F., Cal., in Account No. 7986104185, Held in the Name of Account Servs. Inc., & All Prop. Traceable Thereto*, 643 F. Supp. 2d 577, 583 (S.D.N.Y. 2009) ("Affidavits in support of seizure or search warrants are central to a court's probable cause determination. These documents clearly fall within the definition of 'judicial documents' and public access to them facilitates public monitoring of the various government agencies and branches." (citing *In re Application of Newsday, Inc.*, 895 F.2d 74 (2d Cir. 1990)); *see, e.g., Baltimore Sun Co. v. Goetz*, 886 F.2d 60, 64 (4th Cir. 1989) ("[S]earch warrant affidavits are judicial records. . . .").

Here, the Government argues that Scanlon may not rely on either the First Amendment or common law to obtain the search warrant affidavit. According to the Government, as an indicted criminal defendant, Scanlon's rights are defined by reference to Fed. R. Crim. P. 16 and the normal rules pertaining to criminal discovery. (Dkt. 648 at 20-21; *see, e.g.,* Dkt. 732). However, the Government's logic is belied by the principle

---

[7] McIndoo does not advance a claim to the search warrant affidavit under either the First Amendment or common law. Rather, the focus of McIndoo's argument is that the nature of the allegations in Counts 45 and 46 confer an automatic expectation of privacy with respect to at the KMC South Buffalo Chapter clubhouse, and thus, he is entitled to discovery of the search warrant affidavit. (Dkt. 616 at 16-21; Dkt. 694 at 9-10).

that the criminally accused are provided with greater constitutional protections, not less. *See* U.S. Const. amend. V (disallowing forced testimony against one's self in a criminal case); U.S. Const. amend. VI (providing the criminally accused rights to "a speedy and public trial," to be informed of the nature of the charges, to confront witnesses, and to assistance of counsel); U.S. Const. amend. VIII (disallowing the imposition of excessive bail). Thus, the Court cannot agree that Scanlon would not have the same First Amendment or common law rights of access that a non-indicted person or media organizations enjoy.

Whether the First Amendment or common law provides a right of access to the search warrant affidavit is a more difficult question. The determination of whether Scanlon is entitled to the search warrant affidavit may hinge on which of those rights apply. In other words, as explained by the Fourth Circuit Court of Appeals:

> The distinction between the rights afforded by the first amendment and those afforded by the common law is significant. A first amendment right of access can be denied only by proof of a "compelling governmental interest" and proof that the denial is "narrowly tailored to serve that interest." In contrast, under the common law the decision to grant or deny access is "left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case."

*Baltimore Sun Co.*, 886 F.2d at 64 (citations omitted); *see also United States v. Erie County,* 763 F.3d 235, 241 (2d Cir. 2014) (once a First Amendment right of access has been found, there is generally no need to address a common law right of access claim because the First Amendment right "is stronger" that the common law counterpart); *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 124 (2d Cir. 2006) (recognizing that the First Amendment generally provides a stronger right of access than the common law).

- 17 -

For the reasons set forth below, this Court finds that Judge Roemer's conclusion that Scanlon was not entitled to access the search warrant affidavit under either the First Amendment or common law, is neither clearly erroneous nor contrary to law.

## A.   **First Amendment**

The public and the press have a qualified First Amendment right to access certain judicial documents. *Hartford Courant Co. v. Pelligrino*, 380 F.3d 83, 91 (2d Cir. 2004). There are two approaches for determining whether there should be access to judicial documents under the First Amendment.

> The so-called "experience and logic" approach requires the court to consider both whether the documents "have historically been open to the press and general public" and whether "public access plays a significant positive role in the functioning of the particular process in question." "The courts that have undertaken this type of inquiry have generally invoked the common law right of access to judicial documents in support of finding a history of openness." The second approach considers the extent to which the judicial documents are "derived from or [are] a necessary corollary of the capacity to attend the relevant proceedings."

*Lugosch*, 435 F.3d at 120 (citations omitted). Here, the relevant test is the "experience and logic" approach since there is no public right to attend proceedings related to search warrant applications. *See In re N.Y. Times Co. to Unseal Wiretap & Search Warrant Materials*, 577 F.3d 401, 410 (2d Cir. 2009) (recognizing inapplicability of second approach to wiretap applications since "there is no question that the public and the press are not permitted to attend the *ex parte, in camera* proceedings where wiretap applications are presented to a district judge").

Under the first approach—the "experience and logic" test—two elements must be satisfied to conclude that First Amendment right of access extends to a particular judicial

document: (1) the judicial records must have been historically open to the press and general public (the "history" or "experience" part of the test); and (2) public access must play a significant positive role in the functioning of the particular process in question (the "logic" or "public policy" part of the test). *Id.* at 409.

Even if a First Amendment right of access exists, it is a *qualified* right of access. *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 9 (1986) ("If the particular proceeding in question passes these tests of experience and logic, a qualified First Amendment right of public access attaches."). Thus, documents may still remain sealed "if specific, on the record findings are made demonstrating that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Lugosch*, 435 F.3d at 120 (quoting *Matter of N.Y. Times Co.*, 828 F.2d 110, 116 (2d Cir. 1987)). "Broad and general findings by the trial court, however, are not sufficient to justify closure." *Id.* (quoting *Matter of N.Y. Times Co.*, 828 F.2d at 116).

Here, Scanlon does not cite to any case in the Second Circuit supporting his position that he has a First Amendment right to access the search warrant affidavit. In fact, the Second Circuit has not decided whether an affidavit submitted in support of a search warrant is a type of document for which there is a First Amendment right of access. It did address First Amendment rights in the context of Title III warrant applications in *In re New York Times Co.*, 577 F.3d at 409-10, and while the analysis is different in part due to the confidentiality and privacy concerns expressly set forth in Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2518(8)(b), the Second Circuit's analysis

is at least instructive. [8] In that case, the Second Circuit held that the newspaper had no First Amendment right of access to the records based, in part, on its conclusion that the wiretap applications had not historically been open to the press and general public. *Id.* at 410.

District courts in this circuit have rejected the notion that a First Amendment right attaches to provide access to search warrant applications. For instance, in *United States v. Paloscio*, No. 99 CR 1199(LMM), 2002 WL 1585835 (S.D.N.Y. July 17, 2002), the defendant in a homicide prosecution sought the unsealing and production of search warrants and materials submitted in support of their issuance in connection with the search of an automobile, for which the defendant did not have a personal privacy interest. *Id.* at *3. Finding that the materials related to an ongoing investigation of persons other than the defendant, and that the disclosure might jeopardize the ongoing investigation, the court concluded that the defendant had no First Amendment right of access. *Id.*; *see also In re Search Warrant, Etc., E. Randol Schoenberg*, 16-mc-00464 (PKC), 2016 WL 7339113, at *3 (S.D.N.Y. Dec. 19, 2016) ("The Court concludes that under the experience and logic approach, applicant does not have a protected First Amendment right to access the subject warrant application materials . . . because warrant application proceedings have historically been 'highly secret in nature' and closed to the press and the public."); *All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d at 583 (finding no First Amendment right of access to seizure warrant affidavit at point in the proceedings, where the only judicial

---

[8]     Unlike in this case, the procedural posture of the *In re N.Y. Times Co.* case was post-plea, after the defendants had waived indictment and pleaded guilty. The Government agreed to produce the search warrant applications sought by the press, but not the Title III materials. 577 F.3d at 403-04.

proceeding bearing any connection to the warrants that had occurred to date was the application proceedings themselves, which are "highly secret in nature and have historically been closed to the press and the public."); *In re Application of S.F. Chronicle*, No. 07-00256-MISC (TCP), 2007 WL 2782753, at *2 (E.D.N.Y. Sept. 24, 2007) (concluding that there is no First Amendment right to access search warrant affidavit where "there is no traditional right of public access to search warrant materials nor is there a traditional right for the public to attend search warrant proceedings. . . ."). Although this Court has not found any case addressing the exact situation presented with Scanlon's request, it has found no case (and Scanlon has cited no case) in this circuit recognizing a First Amendment right to access a search warrant affidavit.[9]

The Fourth Circuit similarly has rejected the notion that there is a First Amendment right to access a search warrant affidavit, reasoning that proceedings for the issuance of search warrants are not open. *Baltimore Sun Co.*, 886 F.2d at 65 (citing *Franks v. Delaware*, 438 U.S. 154 (1978) and *United States v. U.S. Dist. Court for E. Dist. of Mich.*, 407 U.S. 297, 313 (1972)). As explained by the Fourth Circuit:

> [T]he need for sealing affidavits may remain after execution and in some instances even after indictment. For example, the affidavit may describe

---

[9] The only possible exception to this is *In re Sealed Search Warrants Issued June 4 & 5, 2008*, No. 08-M-208 (DRH), 2008 WL 5667021 (N.D.N.Y. July 14, 2008), which is cited in Judge Roemer's Decision and Order. (Dkt. 568 at 16). In that case, after finding that the search warrant applications and affidavits should remain sealed and were not subject to production under a common law right of access, the court noted, without elaboration and in a footnote, that "the analysis under the First Amendment leads to the same conclusion. . . ." *In re Sealed Search Warrants Issued June 4 & 5, 2008*, 2008 WL 5667021, at *5 n.3. Thus, one could argue that the court recognized a First Amendment right of access to the search warrant affidavit. However, this Court does not find that rationale persuasive given the lack of any analysis of the issue in that decision.

> continuing investigations, disclose information gleaned from wiretaps that
> have not yet been terminated, or reveal the identity of informers whose lives
> would be endangered. Frequently—probably most frequently—the warrant
> papers including supporting affidavits are open for inspection by the press
> and public in the clerk's office after the warrant has been executed. But this
> is not demanded by the first amendment.

*Id.* Likewise, the Ninth Circuit has rejected the notion that there is a First Amendment

right to access a search warrant affidavit. *Times Mirror Co. v. United States*, 873 F.2d

1210, 1214 (9th Cir. 1989) ("In sum, we find no historical tradition of open search warrant

proceedings and materials. Historical experience . . . furnishes no support for the claimed

right of access to warrant proceedings in the instant cases. On the contrary, the experience

of history implies a judgment that warrant proceedings and materials should not be

accessible to the public, at least while a pre-indictment investigation is still ongoing as in

these cases."). The Sixth Circuit has also found no First Amendment right to access search

warrants and supporting documentation, reasoning that while in some instances the

government may "allow documents filed after execution of the search warrant to become

public," this does not evidence an "historical tradition of accessibility" to the documents

so as to satisfy the "experience and logic" test. *In re the Search of Fair Fin.*, 692 F.3d 424,

431 (6th Cir. 2012).   .

In contrast, the Court is aware of one circuit court decision—from the Eighth

Circuit—that recognized a First Amendment right to access search warrant materials,

although it affirmed the district court's decision to maintain the sealing of the materials

due to the Government's ongoing investigation. *See In re Search Warrant for Secretarial

Area Outside Office of Gunn*, 855 F.2d 569, 573 (8th Cir. 1988). *But see All Funds on*

*Deposit at Wells Fargo Bank*, 643 F. Supp. 2d at 582 n.6 (suggesting that Eighth Circuit's approach conflated First Amendment analysis with common law right).

With no persuasive authority from this circuit supporting Scanlon's position, with several district court decisions from this circuit finding no First Amendment right of access, and with the majority of circuit courts that have addressed the issue finding no First Amendment right of access, this Court cannot conclude that Judge Roemer's decision that Scanlon did not have a First Amendment right to access the search warrant affidavit was clearly erroneous or contrary to law. Proceedings with respect to search warrant applications have not historically been open to the press and general public, and the affidavits supporting a search warrant application are typically filed under seal and remain under seal at least while the investigation is ongoing. Certainly, hearings related to the suppression of evidence obtained pursuant to a search warrant have historically been open to the press and general public, and once the issues related to a search warrant evolve into a suppression hearing, the Court can envision the potential for a First Amendment right to be recognized. However, in this case, Scanlon has not sought a suppression hearing.

In this case, even though an indictment has been returned, the Government has consistently represented that the investigation is ongoing. As a result, Scanlon has failed to meet his burden to establish a First Amendment right under the "experience" prong of the "experience and logic" test. Scanlon criticizes Judge Roemer's reasoning in finding no First Amendment right of access because he took into account the potential detrimental impact that unsealing would have on the ongoing investigation. Scanlon argues that Judge Roemer's "attempt to identify a governmental interest more important than Mr. Scanlon's

First Amendment right of access necessarily assumes that the right exists." (Dkt. 615 at 24). This Court does not read Judge Roemer's decision as doing what Scanlon claims it does. Rather, as recognized in the cited caselaw, the "experience" prong must necessarily evaluate the stage of the criminal proceedings to determine whether the judicial records have historically been open to the press and general public. A search warrant affidavit related to an ongoing investigation that pertains to unchallenged searches of property in which no indicted defendant[10] has claimed a reasonable expectation of privacy interest has not historically been open to the press and general public. At the least, Scanlon has not cited any authority for the notion that under these circumstances, the judicial document is open to the press and general public. Thus, Scanlon has failed to satisfy the experience prong of the experience and logic test, and he has not established a First Amendment right to the affidavit. Judge Roemer's decision rejecting Scanlon's access to the search warrant affidavit under the First Amendment was neither clearly erroneous nor contrary to the law.

### B.    Common Law Right of Access

For purposes of this Decision and Order, and consistent with the findings by Judge Roemer (Dkt. 568 at 16), this Court assumes—without deciding—that Scanlon has a qualified common law right to access the search warrant affidavit. *In re N.Y. Times Co.*,

---

[10]    The one exception is defendant Jack Wood who moved to suppress evidence seized from his home that also allegedly served as a temporary KMC clubhouse and was the subject of a search warrant obtained through the affidavit at issue. Defendant Wood apparently obtained a redacted copy of the affidavit in connection with his challenge to the search of his home. (*See* Dkt. 568 at 15 n.9). However, Scanlon does not argue that this disclosure somehow broadens his rights to the affidavit under either the First Amendment or common law.

577 F.3d at 405 (citing *Nixon v. Warner Commcn's, Inc.*, 435 U.S. 589, 597 (1978)); *see All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d at 583-85. *But see United States v. Bus. of Custer Battlefield Museum & Store*, 658 F.3d 1188, 1192 n.3 (9th Cir. 2011) (recognizing that there is a *per se* rule against any common law right to access warrant materials in the midst of a pre-indictment investigation, and it is unresolved in that circuit whether there is a common law right to access warrant materials when an investigation is ongoing, but an indictment has been returned).

The Second Circuit has explained the basis for a common law right of access to judicial documents:

> The presumption of access is based on the need for federal courts, although independent—indeed, particularly because they are independent—to have a measure of accountability and for the public to have confidence in the administration of justice. Federal courts exercise powers under Article III that impact upon virtually all citizens, but judges, once nominated and confirmed, serve for life unless impeached through a process that is politically and practically inconvenient to invoke. Although courts have a number of internal checks, such as appellate review by multi-judge tribunals, professional and public monitoring is an essential feature of democratic control. Monitoring both provides judges with critical views of their work and deters arbitrary judicial behavior. Without monitoring, moreover, the public could have no confidence in the conscientiousness, reasonableness, or honesty of judicial proceedings. Such monitoring is not possible without access to testimony and documents that are used in the performance of Article III functions.

*United States v. Amodeo*, 71 F.3d 1044, 1048 (2d Cir. 1995).

Once a qualified common law right of access attaches, the weight of the presumption of access must be determined. *Lugosch*, 435 F.3d at 119. Where the documents play a significant role in determining substantive rights, "strong weight" must be afforded to the public right of access. *Amodeo*, 71 F.3d at 1049. Contrastingly:

> Where testimony or documents play only a negligible role in the performance of Article III duties, the weight of the presumption is low and amounts to little more than a prediction of public access absent a countervailing reason. Documents that play no role in the performance of Article III functions, such as those passed between the parties in discovery, lie entirely beyond the presumption's reach, and "stand on a different footing than a motion filed by a party seeking action by the court," or, indeed, than any other document which is presented to the court to invoke its powers or affect its decisions."

*Id.* at 1050 (citations omitted). The motive of the person seeking disclosure is immaterial in determining whether there is a public right of access. *Id.* ("[W]e believe motive generally to be irrelevant to defining the weight accorded the presumption of access.").

A warrant affidavit plays a significant role in determining a person's substantive rights with respect to property, and it sets forth the basis for establishing probable cause to conduct a search. Accordingly, the common law presumption of access to a search warrant affidavit is entitled to "great weight." *All Funds on Deposit at Wells Fargo Bank*, 643 F. Supp. 2d at 584. Thus, in this case, Scanlon has a qualified common-law right to access the search warrant affidavit, and that presumption in favor of access is strong. However, that does not end the inquiry.

A court must balance any competing considerations against access to the judicial document. *Lugosch*, 435 F.3d at 120 (citation omitted). Such countervailing factors include but are not limited to 'the danger of impairing law enforcement or judicial efficiency' and 'the privacy interests of those resisting disclosure.'" *Id.* (quoting *Amodeo*, 71 F.3d at 1050). Here, Judge Roemer determined that the presumption in favor of access was outweighed by the "Government's significant interest in protecting the integrity of the investigation and the identity of its informants." (Dkt. 568 at 16). Judge Roemer went on

to conclude that the search warrant affidavit should remain sealed due to the extensive information contained in the affidavit about cooperating witnesses. (*Id.* at 16-17).

The Government's stated need to maintain confidentiality due to the ongoing nature of its investigation is a legitimate basis to justify maintaining the sealing of significant portions of the search warrant affidavit. This Court has reviewed the search warrant affidavit, and it contains detailed information regarding cooperating witnesses. While some of this information may be disclosed in due course as part of pretrial filings in this case, a common law right of access does not justify wholesale disclosure of the information in the form set forth in the search warrant affidavit. The need to maintain the confidentiality of this information plainly outweighs any common law right of access.[11]

On the other hand, other aspects of the search warrant affidavit set forth information that has already been disclosed as part of the proceedings in this case, including, for instance, background information about the KMC. Certainly, disclosing that information would not compromise the ongoing investigation, and the Court does not view the

---

[11]    Scanlon criticizes Judge Roemer's reference to standing in connection with his discussion of any common law right of access, including when he concluded that releasing the search warrant affidavit for attorneys' eyes only would be a reasonable suggestion if Defendants had standing to challenge the searches and seizures. (Dkt. 568 at 17-18). While this Court agrees that standing has nothing to do with the common law right of access analysis, Scanlon has not cited any caselaw supporting the proposition that an attorneys' eyes only option is an appropriate consideration for production of a judicial document pursuant to a common law right of access. The concept of producing a judicial document pursuant to the common law right of access for attorneys' eyes only is incongruous. In other words, a document is either available to the public under the common law analysis or it is not. The concept of protective orders is more applicable to discovery production involving parties in a litigation—such as where a search warrant affidavit is produced pursuant to a defendant's Fourth Amendment rights.

Government as arguing otherwise. However, because the confidential witness information encompasses a large portion of the affidavit and is contained throughout the affidavit, redaction of that information from the affidavit would render the affidavit of little use. Judge Roemer recognized this, and his decision not to order the disclosure of even a redacted copy of the search warrant affidavit is neither clearly erroneous nor contrary to law. *See In re Newsday, Inc.*, 895 F.2d 74, 80 (2d Cir. 1990) ("[A] district court has the authority to redact a document to the point of rendering it meaningless. . . ."); *Hawit*, 2017 WL 3016794, at *2 (finding that releasing redacted version of search warrant affidavits would serve no purpose "given the scope of the redactions necessary to protect the governmental interests implicated by these documents."); *see also In re Eyecare Physicians of Am.*, 100 F.3d 514, 516 (7th Cir. 1996) (concluding that neither magistrate judge nor district court abused discretion in refusing to unseal or allow access to search warrant affidavits, where, among other things, it was determined that "'redaction would entail such a large portion of the affidavit that it is not a practical alternative'"). Therefore, at least at this time, Scanlon has not established his right to disclosure of the search warrant affidavit under the common law.

## CONCLUSION

For the foregoing reasons, the Court affirms Magistrate Judge Michael J. Roemer's Decision and Order (Dkt. 568), and denies Defendants' motions to unseal the search warrant affidavit.

SO ORDERED.

ELIZABETH A. WOLFORD
United States District Judge

Dated: October 18, 2017
      Rochester, New York